*In re* ALFREDO CARDONA ÁLVAREZ.

*Número:* MC-89-29          *Resuelto:* 11 de junio de 1993

*Norma Cotti Cruz, Subprocuradora General,* y *Eliadís Orsini Zayas, Procuradora General Auxiliar,* abogadas de El Pueblo; *Alfredo Cardona Álvarez, pro se.*

PER CURIAM: El 19 de mayo de 1987 el Sr. Tomás Pérez Figueroa suscribió mediante afidávit ante el notario Alfredo Cardona Álvarez un pagaré personal por la cantidad de dos mil dólares ($2,000). El mismo vino a garantizar un préstamo que le hiciera por dicha cantidad el Sr. Félix Figueroa Ayala. Al acto de notarizar dicho pagaré no compareció la esposa del señor Pérez Figueroa. Solamente comparecieron los señores Pérez Figueroa y Figueroa Ayala.

Al morir el señor Pérez Figueroa, el poseedor del pagaré, señor Figueroa Ayala, presentó al cobro dicho pagaré a la viuda y miembros de la sucesión. En ese momento es que la viuda, Sra. Teresa Flores Casiano, se entera de la deuda contraída por su esposo. Además, se percata al examinar el pagaré que en el mismo aparece su nombre como si ella hubiera firmado el documento. Este hecho le sorprende sobremanera, pues ella nunca compareció ante el notario Cardona Álvarez y la firma que consta en el referido pagaré no es la suya.

Por tal razón, la señora Flores Casiano solicitó al Director de la Oficina de Inspección de Notarías el índice notarial del notario Cardona Álvarez correspondiente a la semana del 17 al 23 de mayo de 1987. Surge de la copia que le fuera enviada que en el documento sólo aparece el nombre de su esposo fallecido. Además, en carta de 23 de septiembre de 1987 que le dirigiera a la señora Flores Casiano el Director de la Oficina de Inspección de Notarías, Lcdo. Govén D. Martínez Surís, éste le informa lo siguiente:

> Como podrá ver por la copia que le acompaño, el notario certifica que quien compareció ante él a firmar fue únicamente Tomás Pérez Figueroa. Tampoco aparece su nombre en el asiento

que hizo el notario en su registro de afidávits. Esto último me lo ratificó el propio notario hoy cuando le llamé por teléfono. Me indicó que solamente había comparecido ante él el Sr. Tomás Pérez Figueroa.

Este es un asunto en que no puedo intervenir. Tanto en el registro de afidávits como en el informe que dicho notario me remitió aparece que el afidávit número 27,309 corresponde únicamente a Tomás Pérez Figueroa. Le recomiendo que se asesore con su abogado de su confianza.

Como la señora Flores Casiano no quiso pagar la deuda, una vez vencido el pagaré el 20 de mayo de 1988, el notario Cardona Álvarez se comunicó por escrito con ella requiriéndole el pago. Ésta se comunicó a su vez con el notario Cardona Álvarez, mediante la vía telefónica, para indicarle que su situación económica no le permitía pagar la deuda. Ante esa negativa, el propio notario Cardona Álvarez procedió a presentar una demanda en cobro de pagaré en el Tribunal de Distrito, Sala de San Germán, en representación del prestamista-acreedor, señor Figueroa Ayala. Caso Civil Núm. CD-88-661.

La parte demandada contestó la demanda negando las alegaciones y opuso como defensa que el pagaré era nulo porque en él aparecía la firma de la demandada Flores Casiano, la cual era falsificada. Las partes argumentaron sus respectivas posiciones y acordaron someter el caso por el expediente. El 13 de enero de 1989 el tribunal de instancia emitió sentencia a favor de la parte demandante. Sostuvo que la deuda contraída por el señor Pérez Figueroa era líquida y exigible. Aun cuando determinó que efectivamente en el pagaré aparece la firma de la demandada, la cual no fue suscrita ante el Notario, concluyó que ésta se tiene por no puesta. Concluyó, además, que "[e]l pagaré donde consta la firma del causante de los demandados, Tomás Pérez Figueroa fue autenticada ante Notario, por lo que es incuestionable su autenticidad y en nada afecta la validez del pagaré como cuenta exigible". Asimismo determinó que "[l]os herederos son la continuidad del causante y vienen obligados a pagar las deudas de este, excepto

cuanto aceptan la herencia a beneficio de inventario. A los acreedores se le pagará primero que a ningún legatario o heredero. Artículos 980 y siguientes del Código Civil".

El 2 de marzo de 1989 se presentó al tribunal de instancia una moción en pago de sentencia acompañada de un cheque por la cantidad de dos mil cuatrocientos treinta y siete dólares con sesenta centavos ($2,437.60), para cubrir el principal más los intereses. De este modo la referida sentencia quedó totalmente pagada.

No obstante, la señora Flores Casiano presentó una queja contra el abogado-notario Cardona Álvarez ante la Oficina del Procurador General. Luego de una investigación y análisis de la queja presentada, el Procurador sometió ante este Tribunal el correspondiente Informe de Conducta Profesional. En el mismo, comenta el Procurador que

[r]esulta claro el hecho también que doña Teresa Flores Casiano no compareció ni firmó el pagaré ante el notario: doña Teresa niega que esa sea su firma y el notario informa que efectivamente ella nunca compareció ante él a firmar ese documento, pero que él desconoce quién añadió esa firma en el documento.

Quién firmó el documento por ella; no se sabe. Tampoco existe prueba que pudiera establecer quién firmó por ella.

Por tanto, la deuda contraída por don Tomás no nos ofrece preocupación en cuanto a la reclamación como tal, vía responsabilidad civil de la sucesión de don Tomás, con extensión de éste con obligación de pagar lo adeudado por el causante.

Sí le resulta preocupante al Procurador que el abogado-notario que preparó el documento de pagaré personal, posteriormente reclamara en nombre del prestamista la deuda mediante la vía judicial. Argumenta que "no podemos sustraernos de la realidad y es razonable presumir que antes de otorgar el pagaré y cuando se otorgó, el abogado-notario Cardona Álvarez representó siempre los intereses del prestamista". Nos remite entonces a los planteamientos hechos por su Oficina en el caso *In re Colón Ramery*, 133 D.P.R. 555 (1993), a los efectos de que en el presente caso hay una incompatibilidad de funciones.

Sometido el escrito del notario Cardona Álvarez, estamos en posición de resolver.

▇▇▇▇ Recientemente en *In re Colón Ramery*, supra, tuvimos la oportunidad de expresarnos con respecto a si incurre o no en un conflicto de intereses un abogado-notario ante el cual se otorga una escritura y luego éste reclama judicialmente en representación de una de las partes otorgantes para exigir las contraprestaciones contenidas en el documento. Sostuvimos que el notario, mucho más que el abogado, tiene que evitar toda apariencia de conducta profesional impropia, puesto que éste representa la fe pública notarial. Asimismo, reafirmamos la norma de que el abogado-notario tiene que ser imparcial, independientemente de que uno de los otorgantes lo haya contratado como abogado previamente. Tiene el abogado-notario la obligación de asesorar bien y por igual a ambos otorgantes. No puede en ningún momento inclinar la balanza en favor de uno u otro de los otorgantes.(¹) En *In re Colón Ramery*, supra, resolvimos que independientemente de que el notario no representa a parte alguna y sí la ley para todos por igual, no puede permitirse que éste reclame judicialmente en representación de una de las partes otor-

---

(¹) En relación con el deber de asesorar a los otorgantes, en *In re Meléndez Pérez*, 104 D.P.R. 770, 774–775 (1976), dijimos que:

"Por tradición, y en nuestra patria además por expresión legislativa, el notario no es simple observador del negocio jurídico que ante él se realiza limitando su actuación a cerciorarse de la identidad de partes y autenticidad de las firmas. Su función, que no es privada, sino pública, trasciende la de un autómata legalizador de firmas y penetra el campo de legalidad de la transacción que ante él se concreta. ¿Cómo guardar silencio ante una situación lesiva para cualquiera de los otorgantes, si su entrenamiento legal le hace testigo de la irregularidad? ¿Para qué otra cosa sirve su profesión de abogado por ley puesta a disposición de las partes en su despacho notarial? *En su deber de ilustrar, y dar consejo legal a las partes contratantes, no hay guardarraya que separe al notario del abogado.* El notario que impasible ve consumarse en su presencia un pacto cuyas consecuencias legales ignora alguna de las partes o que pudiendo hacerlo, por ser abogado, rehúsa explicar a los menos informados el significado y proyecciones de cláusulas para ellos poco menos que ininteligibles; el notario que limita su intervención rutinaria a leer el documento a los otorgantes y asegurarse de la identidad de sus personas o firmas, en un ritual aséptico pero vacío de la inteligencia y comprensión de los firmantes, está con su desidia derrotando los fines y propósitos que le hicieron depositario de inapreciable confianza pública." (Énfasis suplido).

gantes de un documento exigiendo la contraprestación a la que se obligó la otra parte. Indicamos que esto en sí no representa un conflicto de intereses, pero sí plantea un problema de incompatibilidad cuando se está frente a reclamaciones de índole contenciosa. Da la falsa impresión de que el notario siempre estuvo representando los intereses de la parte a nombre de la cual reclama. Finalmente, concluimos que de permitirse dicha práctica, lesionaríamos gravemente la institución del notariado y, particularmente, la fe pública notarial e hicimos hincapié en que "la apariencia de impropiedad puede ser muy lesiva al respeto de la ciudadanía por sus instituciones de justicia y por la confianza que los clientes depositan en sus abogados". *In re Rojas Lugo*, 114 D.P.R. 687, 690 (1983).

En *In re Colón Ramery*, supra, consideramos también lo dispuesto en el Canon 22 del Código de Ética Profesional, 21 L.P.R.A. Ap. IX, a los efectos de que un abogado debe evitar testificar en beneficio de su cliente y renunciar su representación cuando se percata de que puede ser llamado a declarar en su contra. Expresamos que "[e]n toda acción en la que un instrumento notarial sea el objeto de la controversia, el notario siempre es testigo silente" (*In re Colón Ramery*, supra, pág. 561) y existe la posibilidad de que sea llamado a testificar en apoyo de uno u otro de los otorgantes. Cabe señalar, sin embargo, que debido a los hechos específicos del caso, la norma enunciada la hicimos aplicable de forma prospectiva únicamente.

El caso de autos tenemos que distinguirlo del de *In re Colón Ramery*, supra. En el presente caso se trata de una declaración de autenticidad donde el notario sólo da fe de la autenticidad de la firma[2] del compareciente. En

---

[2] En relación con la función pública del notario, la Regla 2 del Proyecto de Reglamento Notarial de Puerto Rico de 5 de junio de 1992, pág. 2, expresa lo siguiente:

"En su función pública, ejerce la fe pública notarial que tiene y ampara un doble carácter:

estos casos "[e]l notario no asume responsabilidad alguna por el contenido del documento privado cuyas firmas legitime". Art. 56 de la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987 (4 L.P.R.A. sec. 2091); E. Giménez-Arnau, *Derecho Notarial*, 2da ed., Pamplona, Ed. Univ. de Navarra, 1976, Cap. LIV, págs. 801–803. Por lo tanto, "[l]a certificación de la autenticidad de las firmas en un pagaré bajo la fe notarial, '... simplemente constituye un certificado o fórmula que acredita que el documento se suscribió ante un funcionario (notario autorizante)' ". S. Torres Peralta, *La Nueva Ley Notarial de Puerto Rico*, 48 (Núm.3) Rev. C. Abo. P.R. 3, 119 (1987). Bajo ninguna circunstancia el notario califica y garantiza el contenido de la declaración de autenticidad. P. Malavet Vega, *Manual de Derecho Notarial Puertorriqueño*, Santo Domingo, Ed. Corripio, 1988, pág. 142; *Rodríguez Vidal v. Benvenutti*, 115 D.P.R. 583, 587 (1984).

El pagaré objeto de esta controversia lee como sigue:

> Pagaré por *$2,000.00.* Vence en *20 de mayo de 1988* Pagaré a *Félix Figueroa Ayala*, o a su orden en su oficina o residencia en *San Germán*, Puerto Rico e[nl]a suma de *$2,000.00 DOS MIL DOLARE[S* i]ntereses al tipo del *12 1/2* porciento anual por valor recibido. Me someto expresamente a la jurisdicción del Tribunal competente, de cualquier sala de Puerto Rico, y me obligo a pagar intereses en caso de mora al tipo del *12 1/2%* por ciento anual, los gastos, costas y desembolsos y honorarios de abogado que las gestiones de dicho cobro ocasione.
>
> San Germán, Puerto Rico, a 19 de mayo de 1987.
>
> <u>Firma del Deudor</u>
> Deudor
>
> <u>(Este espacio se dejó en blanco)</u>
> Co-Deudor

---

"(A) en la esfera de los hechos, la exactitud de lo que el Notario ve, oye o percibe por sus sentidos y

"(B) en la esfera del Derecho, confiere autenticidad y fuerza probatoria a las declaraciones de voluntad de las partes en el instrumento público redactada conforme a su juicio sobre los preceptos del ordenamiento jurídico para la validez y eficacia del acto o contrato formalizado, y sobre la identidad y capacidad de las partes."

Aff. Núm. 21,309

SUSCRITO ante mí por Tomás Pérez Figueroa y (este espacio se dejó en blanco), de las circunstancias mayores de edad, *casado con Teresa Flores, CHOFER PUBLICO* y vecinos de SAN GERMAN, Puerto Rico a quienes doy fe de conocer personalmente en San Germán, P.R. hoy día 19 de mayo de 1987.

Firma del Notario
NOTARIO PUBLICO

Como podrá observarse, en dicho documento, al momento de autenticarse la firma del señor Pérez Figueroa ante el notario Cardona Álvarez, se dejaron en blanco varios espacios que luego fueron llenados. Además, aparece en la declaración de autenticidad que aunque sólo se indica que compareció el señor Pérez Figueroa, toda la información referente a éste está en plural. Al no requerir este tipo de documento una unidad de acto, la impresión que da al leer dicha declaración de autenticidad es que se esperaba que en algún momento compareciera a suscribir la misma la señora Flores Casiano u otra persona para completar lo allí indicado. Claro está, en caso de que ella u otra persona hubiera comparecido con posterioridad al 19 de mayo de 1987, entonces se hubiera tenido que hacer, en el mismo documento, otra declaración de autenticidad.

El hecho de que en este caso se hubieran dejado espacios en blanco en lo que respecta a un posible codeudor y se le hubiera entregado el documento al otorgante Tomás Torres Figueroa, propició el que se pudiera llevar a cabo la falsificación o alteración del documento. Los abogados-notarios deben ser cautelosos en el uso de formas pre-impresas. Si éstas están redactadas en plural y sólo comparece una persona a suscribir la declaración de autenticidad, debe reescribirse la página para que se haga constar este hecho o, cuando menos, trazarse una línea (————) en los espacios en blanco referentes al codeudor. De esta forma se protege la integridad del documento.

Distinto también a lo que ocurrió en *In re Colón Ramery*, supra, en el caso ante nuestra consideración, mucho

antes de que surgiera la reclamación judicial, se planteó y trajo a la atención del notario Cardona Álvarez el problema de la posible falsificación de la firma de la señora Flores Casiano en el pagaré[3] y la posición de ésta con respecto al documento que él había autenticado.

Ahora bien, a pesar de que el notario Cardona Álvarez notarizó el pagaré en cuestión y que conocía el hecho de que la señora Flores Casiano no lo firmó, acudió al tribunal a reclamar judicialmente la deuda evidenciada en el pagaré en el que aparecía la supuesta firma de la señora Flores Casiano. Precisamente él era el mejor testigo del hecho de que la señora Flores Casiano no había comparecido ante él a firmar. Cabe señalar, además, que en su contestación la demandada opuso como defensa afirmativa la nulidad del pagaré basándose precisamente en que la firma de la codemandada Flores Casiano había sido falsificada. A pesar de todo esto, el licenciado Cardona Álvarez continuó representando al demandante. Éste excusa su actuación alegando que a la codemandada Flores Casiano se le reclamó en calidad de heredera y que la deuda era líquida y exigible.

Francamente, esto es querer despachar livianamente una actuación altamente impropia por parte del abogado-notario Cardona Álvarez que no se puede permitir. Éste no ejerció la adecuada prudencia y discreción. Dado los hechos particulares del presente caso, distinto al caso *In re Colón Ramery,* supra, surgía con meridiana claridad el deber del abogado-notario Cardona Álvarez de abstenerse de representar los intereses del acreedor-prestamista en el pleito. Él sabía que se cuestionaría el documento. Era consciente

---

[3] Posteriormente, el tribunal de instancia determinó como un hecho probado que efectivamente la señora Flores Casiano no compareció a la Oficina del notario Cardona Álvarez para suscribir el pagaré junto a su esposo. Sin embargo, nunca se llegó a dilucidar ante el tribunal cómo llegó la firma al pagaré ni a quién pertenecía ésta, ya que el caso fue sometido por el expediente. La señora Flores Casiano no tuvo que prestar testimonio ante el tribunal.

de que se alegaría que una de las firmas que allí aparecía era falsificada. Por último, aun después que se adujo como defensa afirmativa una impugnación del documento debido a la antes mencionada falsificación, continuó representando al demandante. El abogado-notario Cardona Álvarez perdió de vista la importancia que tiene para la fe pública notarial el que en todas sus ejecutorias como abogado y como notario, evite toda apariencia de conducta profesional impropia. "La dignidad, la responsabilidad y la probidad notarial se caracterizan, entre otros aspectos, por saber qué es inmoral o no ético, aunque no esté dicho por la Deontología notarial. Afirmar lo contrario es aceptar que pueden existir aquellas virtudes en convivencia con actos inmorales." R.M. Arata, *Ética Notarial*, Buenos Aires, Ed. Abeledo Perrot, 1975, pág. 75.

En virtud de lo expresado anteriormente y tomando en consideración que la norma enunciada en *In re Colón Ramery, supra,* es de aplicación prospectiva, *se dictará sentencia en la que nos limitamos a amonestar al abogado-notario Cardona Álvarez y apercibirle para que en el futuro ejerza mayor prudencia.*

El Juez Asociado Señor Rebollo López disintió por las razones expresadas en la opinión disidente que emitiera en el caso *In re Colón Ramery*, 133 D.P.R. 555 (1993). El Juez Asociado Señor Alonso Alonso concurrió sin opinión escrita.