*In re* CHARLES E. FIGUEROA ÁLVAREZ.

*Número:* AB-98-208          *Resuelto:* 13 de diciembre de 2001

*Gustavo A. Gelpí* y *Carlos Lugo Fiol, Procuradores Generales,* e *Yvonne Casanova Pelosi, Procuradora General Auxiliar; Carmen H. Carlos,* Directora de la Oficina de Inspección de Notarías, en informe; *José A. Morales,* de *Figueroa Morales & Chaves Caraballo,* abogado del querellado; *Esteban González Carminely, pro se.*

El Juez Asociado Señor Hernández Denton emitió la opinión del Tribunal.

¿Puede un notario autorizar declaraciones de autenticidad o testimonios cuando alguno de los otorgantes es su pariente dentro del cuarto grado de consaguinidad o segundo de afinidad? Por estar dicha actuación prohibida por

la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987 (4 L.P.R.A. sec. 2001 *et seq.*), contestamos en la negativa y concluimos que las disposiciones que dicho documento contenga que favorezcan al pariente del notario dentro de los grados prohibidos, serán nulas. Aunque se supone que todos los notarios conocen esta prohibición y la jurisprudencia aplicable, la queja presentada en el caso de autos nos permite reiterar dicha normativa para el beneficio de toda la clase togada.

I

El Sr. Esteban González Carminely presentó varias quejas contra el Lcdo. Charles E. Figueroa Álvarez por violaciones al Código de Ética Profesional, 4 L.P.R.A. Ap. IX, y a la Ley Notarial de Puerto Rico. En la primera queja se alegó que el abogado retuvo fondos y expedientes pertenecientes al señor González y que en un caso sobre cobro de dinero no planteó la defensa de prescripción, cuando era evidente que dicha defensa procedía en derecho. Además, se adujo que el licenciado Figueroa Álvarez utilizó "tácticas dilatorias" al representar al señor González en un caso sobre rebaja de pensión alimentaria con el fin de justificar el cobro de honorarios de abogado de su parte, causando con su inacción el encarcelamiento del señor González. En la segunda queja se planteó que el abogado había violado el Art. 5 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2005, al autorizar tres (3) declaraciones juradas en las cuales comparecían como firmantes su hija e hijastra.

El abogado contestó las quejas, negando y explicando cada una de las alegadas violaciones al Código de Ética Profesional. En cuanto a las violaciones a la Ley Notarial de Puerto Rico, el licenciado Figueroa Álvarez admitió los hechos, pero argumentó que su actuación no estaba prohibida por la Ley Notarial de Puerto Rico y que, de estarlo,

entendía que su proceder se justificaba como un error honesto de juicio.

Después de varios trámites procesales, referimos el caso al Procurador General para una investigación. En su Informe, el Procurador General nos expresa que de las minutas y resoluciones del tribunal de instancia —en el cual se dilucidaron los casos objeto de este procedimiento disciplinario— se desprende que, contrario a lo alegado por el señor González, el licenciado Figueroa Álvarez efectivamente presentó la defensa de prescripción en la acción sobre cobro de dinero contra éste y que dicha defensa fue adjudicada en sus méritos por el tribunal. En cuanto al encarcelamiento de González en el caso sobre rebaja de pensión alimentaria, el Procurador General explica en su Informe que la razón para dicho encarcelamiento fue la cuantiosa deuda que éste tenía con la Administración para el Sustento de Menores, y no la ausencia de gestiones de parte del abogado.[1] Más aún, de las minutas del tribunal de instancia anejadas al Informe del Procurador General surge claramente que el licenciado Figueroa Álvarez gestionó inmediatamente el excarcelamiento de González y negoció con la otra parte la deuda por pensiones alimentarias incumplidas.[2]

Con relación a las alegaciones sobre retención de expedientes y fondos pertenecientes a González por el licenciado Figueroa Álvarez, la investigación del Procurador General no produjo evidencia que sustentara tales hechos. De la investigación se desprende que el señor González no pudo presentar prueba alguna, más allá de meras alegaciones, que sustentara las serias imputaciones que le hizo al licenciado Figueroa Álvarez en este sentido. Por ende, contrario a lo alegado por el quejoso, el Procurador General

---

[1] La deuda por pensión alimentaria del Sr. Esteban González Carminely ascendía a $32,155.

[2] La deuda se redujo a $19,405 después de abonar ciertos pagos y créditos.

entendió que el licenciado Figueroa Álvarez demostró haber actuado con diligencia en la tramitación de los casos bajo su encomienda y refutó la alegación de conducta impropia.

El Procurador General concluye que, en lo que respecta a las alegadas violaciones al Código de Ética Profesional, no existe evidencia suficiente que justifique el inicio de un procedimiento disciplinario en contra del abogado. Coincidimos con su recomendación. Entendemos que en este caso no se demostraron las alegadas violaciones al Código de Ética Profesional mediante prueba clara, robusta y convincente. *In re Caratini Alvarado*, 153 D.P.R. 575 (2001). Por ello, se ordena el archivo de la queja por violaciones al Código de Ética Profesional.

## II

En lo que respecta a las violaciones a la Ley Notarial de Puerto Rico, del Informe de la Oficina de Inspección de Notarías surge que el licenciado Figueroa Álvarez autorizó tres (3) declaraciones juradas, para los meses de julio y septiembre de 1999, en las cuales las firmantes eran su hija e hijastra. Las declaraciones juradas en cuestión son las siguientes: (1) asiento 2968 de 20 de julio de 1999 — Sandra Figueroa Resto, para autorizar a la Universidad de Puerto Rico a brindarle ayuda médica a su hija Karen, de ser necesario; (2) asiento 2978 de 29 de julio de 1999 — Carmen A. Figueroa Resto juramenta una petición de licencia para tener y poseer un arma de fuego; (3) asiento 3013 de 23 de septiembre de 1999 — Carmen A. Figueroa Resto juramenta un traspaso de vehículo de motor a favor de Carmen M. Márquez Meléndez. Estos hechos los aceptó el licenciado Figueroa Álvarez en su contestación a la queja.

En su comparecencia, el licenciado Figueroa Álvarez plantea que las tres (3) declaraciones de autenticidad au-

torizadas por él a sus hijas no constituyen "instrumentos" dentro del concepto del Art. 5 de la Ley Notarial de Puerto Rico, *supra*, el cual descalifica al notario para autorizar instrumentos en que uno de los otorgantes sea su pariente dentro del cuarto grado de consaguinidad o segundo de afinidad. Argumenta el licenciado Figueroa Álvarez que el Art. 56 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2091, hace extensiva la prohibición del referido Art. 5 a los testimonios, mas no a las declaraciones de autenticidad, por no tratarse del mismo concepto. Sostiene el licenciado Figueroa Álvarez, además, que la declaración de autenticidad de que habla la ley notarial vigente es el affidávit de la Ley de 12 de marzo de 1908, y que ni ésta ni la Ley Notarial de 1956 contenían nada que descalificara al notario para autenticar firmas por razón de parentesco.

Por su parte, la Directora de la Oficina de Inspección de Notarías nos explica en su Informe que la descalificación relativa del notario por razón de parentesco con alguno de los otorgantes del documento autorizado, según lo dispone la Ley Notarial de Puerto Rico, aplica a la legitimación de firmas como a todo testimonio considerado en el Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV. Por consiguiente, el Informe de la Oficina de Inspección de Notarías concluye que el licenciado Figueroa Álvarez violó la Ley Notarial de Puerto Rico al autorizar tres (3) declaraciones de autenticidad en las que comparecían su hija e hijastra. No obstante, la Directora de la Oficina de Inspección de Notarías nos informa que el licenciado Figueroa Álvarez no ha tenido en el pasado señalamiento alguno en su desempeño como notario y que su proceder en este caso no es indicativo de un patrón de conducta, sino más bien de una actuación aislada.

Visto lo anterior, procedemos a resolver la presente acción disciplinaria a la luz de las violaciones a la Ley Notarial de Puerto Rico. La controversia se circunscribe entonces a dilucidar si un notario puede autorizar testimonios de

legitimación de firmas cuando el firmante, o uno de los firmantes, es su pariente dentro del cuarto grado de consanguinidad o segundo de afinidad.

## III

█ Un testimonio o declaración de autenticidad es un documento notarial que no forma parte del Protocolo, y en el cual el notario da fe de la veracidad de un hecho que le consta de personal conocimiento. El testimonio puede referirse a la legitimación de firmas, autenticación de una copia o traducción fiel y exacta de un documento no matriz, y a la identidad de cualquier objeto o cosa. Reglas 65 y 66 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV. En particular, el testimonio de legitimación de firmas se refiere al documento en que el notario da fe de la identidad del compareciente, de su firma y de la fecha en que firmó, aunque no del contenido del documento. Regla 67 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV; *In re Caratini Alvarado*, supra.

█ El notario podrá dar fe de las firmas que aparezcan en un documento no matriz siempre que no se trate de actos comprendidos en los incisos (1) al (6) del Art. 1232 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3453.([3]) Regla 68 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV. De igual forma, el Art. 56 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2091, dispone que el notario no podrá autorizar testimonios en los casos comprendidos en el Art. 5 de la referida ley, *supra*. En particular, el Art. 5 de la Ley Notarial de Puerto Rico, *supra*, dispone:

(a) Ningún notario podrá autorizar instrumentos en el que

---

([3]) El mencionado artículo se refiere a los actos y contratos que tengan por objeto la creación, modificación o transmisión de derechos reales sobre bienes inmuebles; los arrendamientos de bienes inmuebles por seis años o más; las capitulaciones matrimoniales; la cesión, repudiación y renuncia de derechos hereditarios, entre otros.

él intervenga como parte o que contenga disposiciones a su favor. Tampoco podrá autorizarlos si alguno de los otorgantes es pariente suyo dentro del cuarto grado de consanguinidad o segundo de afinidad, excepto cuando aquél comparezca en el instrumento en calidad representativa.

(b) No producirán efecto las disposiciones a favor de parientes, dentro del cuarto grado de consanguinidad o segundo de afinidad del notario que autorizó el instrumento público en que se hicieron.

En conjunto, el Art. 56 y el Art. 5 de la Ley Notarial de Puerto Rico, *supra*, establecen una prohibición expresa al notario. Éste no deberá autorizar testimonios o declaraciones de autenticidad cuando el compareciente sea su pariente dentro del cuarto grado de consanguinidad o segundo de afinidad, en cuyo caso el documento adolecerá de nulidad parcial cuando el instrumento contenga disposiciones a favor del pariente.

■ No es la primera vez que tenemos ante nuestra consideración un asunto como el presente. En *In re Filardi Guzmán*, 144 D.P.R. 710 (1998), señalamos que según el Art. 5 de la Ley Notarial de Puerto Rico, *supra*, si las disposiciones son a favor del notario, los documentos notariales que contienen esas disposiciones son nulos, pero si las disposiciones son a favor de los parientes del notario en los grados prohibidos por consanguinidad o afinidad, lo que son nulas son estas disposiciones y no el documento. Véase, además, *In re Frontera Enseñat*, 150 D.P.R. 134 (2000).

■ La función del notario debe siempre reflejar total imparcialidad, por lo que autorizar documentos a parientes dentro de los grados prohibidos por el Art. 5 antes citado resulta contrario a su función notarial. El notario tiene que evitar toda apariencia de conducta profesional impropia, debido a que éste representa la fe pública notarial. *In re Colón Ramery*, 138 D.P.R. 793 (1995); *In re Cardona Álvarez*, 133 D.P.R. 588 (1993); *In re Feliciano Ruiz*, 117 D.P.R. 269 (1986).

A tenor con esta normativa, pasemos a dilucidar la controversia que nos ocupa.

## IV

En el caso de autos, el licenciado Figueroa Álvarez acepta su relación de parentesco en el primer grado de consanguinidad y segundo de afinidad con las comparecientes en las declaraciones de legitimación de firmas en controversia. Sin embargo, argumenta que no ha violado la Ley Notarial de Puerto Rico porque, según estima, la prohibición del Art. 56 de dicha ley, *supra*, sólo alcanza a los testimonios, mas no a las declaraciones de autenticidad (o affidávit), al no tratarse de conceptos iguales.[4] No tiene razón.

El testimonio está contenido en el concepto de affidávit. Hemos indicado que el affidávit es el *género* dentro del cual se incluyen las *especies* o modalidades de autenticidad, que pueden referirse a: (1) autenticidad de firma; (2) autenticidad de un juramento, o (3) autenticidad de otro hecho, acto o contrato. *Rodríguez Vidal v. Benvenutti*, 115 D.P.R. 583, 587 (1984). Siguiendo ese razonamiento, cabe concluir que la especie siempre está incluida en el género, por lo que todos los testimonios clasificados como tales en el Art. 56 de la Ley Notarial de Puerto Rico, *supra*, y en la Regla 66 del Reglamento Notarial de Puerto Rico, *supra*, pueden indistintamente autorizarse lo mismo por la figura genérica del affidávit o por la figura particular del testimonio. S. Torres Peralta, *El Derecho Notarial Puertorriqueño*, ed. especial, San Juan, Pubs. STP, 1995, Cap. XV.

Por otro lado, la Sec. 1 de la Ley de 12 de marzo de

---

[4] El referido artículo lee, en su parte pertinente: "No podrán los notarios autorizar testimonios en los casos comprendidos en la sec. 2005 de este título ...." 4 L.P.R.A. sec. 2091.

1908 (4 L.P.R.A. ant. sec. 887), disponía: "[l]lámase affidavit o declaración de autenticidad el acto y el documento ...". La actual ley notarial de 1987 dispone en su Art. 56 lo siguiente: "Llámase testimonio o declaración de autenticidad al documento mediante el cual un notario ...". 4 L.P.R.A. sec. 2091. Como vemos, lo que ocurrió fue un cambio en los términos. La ley no establece definiciones distintas para testimonios y declaraciones de autenticidad; ambas se utilizan indistintamente y significan lo mismo. Como señalan los profesores Urrutia y Negrón, los affidávit todavía existen con ese nombre. Cuando se redactó la ley notarial de 1987, el legislador le cambió el nombre a ese concepto y expresó que el notario, además de redactar instrumentos públicos, hace también testimonios. Este concepto de testimonio o declaración de autenticidad bajo la fe pública está reglamentado por los Arts. 56 a 60 de la Ley Notarial de Puerto Rico, *supra*. C.R. Urrutia y L.M. Negrón, *Curso de Derecho Notarial Puertorriqueño*, 2da ed., San Juan, ed. de los autores, 1999, pág. 536.

▪ Cabe señalar que la referida ley sobre affidávit de 1908 no descalificaba al notario para autenticar la firma de una persona por razón de parentesco. Esta innovación se hace expresa con la ley notarial de 1987. Ahora bien, como mencionamos, los documentos en el caso de autos no son nulos, pues la comparecencia como otorgante de un pariente del notario dentro del cuarto grado de consanguinidad o segundo de afinidad, no tiene efecto de nulidad. La sanción se limita a negarle efecto a las disposiciones a favor de los parientes, dentro de los grados prohibidos, del que autorizó el instrumento en que se hicieron. En el caso de autos, los documentos no contienen disposición alguna que favorezca al pariente del notario, por lo que son válidos en su totalidad. *In re Hernández González*, 106 D.P.R. 456, 457 (1977); *In re Filardi Guzmán*, supra; *In re Frontera Enseñat*, supra.

▪ En el presente caso, el licenciado Figueroa Álva-

rez ciertamente violó la Ley Notarial de Puerto Rico. Sin embargo, como es sabido, al determinar la sanción disciplinaria aplicable al abogado, podemos tomar en cuenta factores como la reputación del abogado en su comunidad, el previo historial de éste —si es su primera falta— la aceptación de la falta y su sincero arrepentimiento, si se trata de una conducta aislada, el ánimo de lucro que medió en su actuación, el resarcimiento al cliente y cualesquiera otras consideraciones ya bien atenuantes o agravantes que medien de acuerdo con los hechos. Véanse: *In re Díaz Ortiz*, 150 D.P.R. 418 (2000); *In re Padilla Rodríguez*, 145 D.P.R. 536 (1998); *In re Ortiz Velázquez*, 145 D.P.R. 308 (1998); *In re Fernández Paoli*, 141 D.P.R. 10 (1996).

En el caso particular del licenciado Figueroa Álvarez, tomamos conocimiento de su buen historial profesional, incluso su desempeño en el servicio público de nuestro país. Además, del Informe de la Directora de la Oficina de Inspección de Notarías se desprende que él aceptó los hechos imputados y que su actuación no causó daño a persona alguna ni hubo intención de lucro o beneficio personal. De hecho, los documentos autorizados mantienen su validez y no causaron perjuicio a los que actuaron confiando en sus constancias. Procede que limitemos nuestra sanción a una amonestación. Se le apercibe, además, que en el futuro deberá conocer y cumplir estrictamente con nuestro ordenamiento notarial.

*Se dictará la sentencia correspondiente.*

El Juez Asociado Señor Rivera Pérez no intervino.