AB-98-208                                   1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>    Charles E. Figueroa Alvarez | Queja<br><br>2001 TSPR 173<br><br>155 DPR ___ |

Número del Caso: AB-1998-208

Fecha: 13/diciembre/2001

Oficina del Procurador General:
                          Lcda. Yvonne Casanova Pelosi
                          Procuradora General Auxiliar

Oficina de Inspección de Notarías:
                          Lcda. Carmen H. Carlos
                          Directora

Abogado de la Parte Querellada:

                          Lcdo. José A. Figueroa Morales

Materia: Conducta Profesional

    Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Charles E. Figueroa
Alvarez

                              AB-98-208        Certiorari

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton

            San Juan, Puerto Rico, a 13 de diciembre de 2001.

            ¿Puede un notario autorizar declaraciones de autenticidad o testimonios cuando alguno de los otorgantes es su pariente dentro del cuarto grado de consaguinidad o segundo de afinidad?  Por estar dicha actuación prohibida por la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987, 4 L.P.R.A. sec. 2001 *et seq.*, contestamos en la negativa y concluimos que las disposiciones que dicho documento contenga favoreciendo al pariente del notario dentro de los grados prohibidos serán nulas. Aunque se supone que todos los notarios

conocen esta prohibición y la jurisprudencia aplicable, la queja presentada en el caso de autos nos permite reiterar dicha normativa para el beneficio de toda la clase togada.

I.

El Sr. Esteban González Carminely presentó varias quejas contra el Lcdo. Charles Figueroa Álvarez por violaciones al Código de Ética Profesional, 4 L.P.R.A. Ap. IX, y a la Ley Notarial de Puerto Rico, *supra*. En la primera queja se alegó que el abogado retuvo fondos y expedientes pertenecientes al señor González y que en un caso sobre cobro de dinero, no planteó la defensa de prescripción cuando era evidente que dicha defensa procedía en derecho. Además, se adujo que el licenciado Figueroa Álvarez utilizó "tácticas dilatorias" al representar al señor González en un caso sobre rebaja de pensión alimentaria con el fin de justificar el cobro de honorarios de abogado de su parte, causando con su inacción el encarcelamiento del señor González. En la segunda queja, se planteó que el abogado había violado el Artículo 5 de la Ley Notarial, 4 L.P.R.A. sec. 2005, al autorizar tres (3) declaraciones juradas en las cuales comparecían como firmantes su hija e hijastra.

El abogado contestó las quejas negando y explicando cada una de las alegadas violaciones al Código de Ética Profesional, *supra*. En cuanto a las violaciones a la Ley Notarial, *supra*, el licenciado Figueroa Álvarez admitió los hechos, pero argumentó que su actuación no estaba prohibida por la Ley

Notarial, y de estarlo, entendía que su proceder se justificaba como un error honesto de juicio.

Después de varios trámites procesales, referimos el caso al Procurador General para una investigación. En su Informe, el Procurador General nos expresa que de las minutas y resoluciones del Tribunal de Instancia –en el cual se dilucidaron los casos objeto de este procedimiento disciplinario– se desprende que, contrario a lo alegado por el señor González, el licenciado Figueroa Álvarez efectivamente presentó la defensa de prescripción en la acción sobre cobro de dinero contra éste y que ésta fue adjudicada en sus méritos por el tribunal. En cuanto al encarcelamiento de González en el caso sobre rebaja de pensión alimentaria, el Procurador General explica en su Informe que la razón para dicho encarcelamiento fue la cuantiosa deuda que éste tenía con la Administración para el Sustento de Menores y no la ausencia de gestiones de parte del abogado.[1] Mas aun, de las minutas del Tribunal de Instancia anejadas al Informe del Procurador, surge claramente que el licenciado Figueroa Álvarez gestionó inmediatamente el excarcelamiento de González y negoció con la otra parte la deuda por pensiones alimentarias incumplidas.[2]

Con relación a las alegaciones sobre retención de expedientes y fondos pertenecientes a González por el licenciado Figueroa Álvarez, la investigación del Procurador

---

[1]La deuda por pensión alimentaria del Sr. González ascendía a $32,155.

no produjo evidencia que sustentara tales hechos. De la misma se desprende que el señor González no pudo presentar prueba alguna, más allá de meras alegaciones, que sustentara las serias imputaciones que le hizo al licenciado Figueroa Álvarez en este sentido. Por ende, contrario a lo alegado por el quejoso, el Procurador General entendió que el licenciado Figueroa Álvarez demostró haber actuado con diligencia en la tramitación de los casos bajo su encomienda y refutó la alegación de conducta impropia.

El Procurador concluye que en lo que respecta a las alegadas violaciones al Código de Ética Profesional no existe evidencia suficiente que justifique el inicio de un procedimiento disciplinario en contra del abogado. Coincidimos con su recomendación. Entendemos que en este caso no se demostraron las alegadas violaciones al Código de Ética mediante prueba clara, robusta y convincente. In re Caratini Alvarado, res. el 9 de marzo de 2001, 2001 T.S.P.R. 46. Por ello, se ordena el archivo de la queja por violaciones al Código de Ética.

II.

En lo que respecta a las violaciones a la Ley Notarial, del Informe de la Oficina de Inspección de Notarías surge que el licenciado Figueroa Álvarez autorizó tres (3) declaraciones juradas, para los meses de julio y septiembre de 1999, en las

---

[2]La deuda se redujo a $19,405 después de abonar ciertos pagos

cuales las firmantes eran su hija e hijastra. Las declaraciones juradas en cuestión son las siguientes: (1) asiento 2968 de 20 de julio de 1999 – Sandra Figueroa Resto, para autorizar a la Universidad de Puerto Rico a brindarle ayuda médica a su hija Karen, de ser necesario; (2) asiento 2978 de 29 de julio de 1999 – Carmen A. Figueroa Resto juramenta petición de licencia para tener y poseer arma de fuego; (3) asiento 3013 de 23 de septiembre de 1999 – Carmen A. Figueroa Resto juramenta traspaso de vehículo de motor a favor de Carmen M. Márquez Meléndez. Estos hechos los aceptó el licenciado Figueroa Álvarez en su contestación a la queja.

En su comparecencia el licenciado Figueroa Álvarez plantea que las tres (3) declaraciones de autenticidad autorizadas por él a sus hijas no constituyen "instrumentos" dentro del concepto del Artículo 5 de la Ley Notarial, 4 L.P.R.A. sec. 2005, el cual descalifica al notario para autorizar instrumentos en que uno de los otorgantes sea su pariente dentro del cuarto grado de consaguinidad o segundo de afinidad. Argumenta que el Artículo 56 de la Ley Notarial, 4 L.P.R.A. sec 2091, hace extensiva la prohibición del Art. 5 a los testimonios, más no a las declaraciones de autenticidad, por no tratarse del mismo concepto. Sostiene el licenciado Figueroa Álvarez, además, que la declaración de autenticidad de que habla la Ley Notarial vigente es el affidávit de la Ley 12 de marzo de 1908 y ni ésta

_____

y créditos.

ni la Ley Notarial de 1956 contenían nada que descalificara al notario para autenticar firmas por razón de parentesco.

Por su parte, la Directora de la Oficina de Inspección de Notarías nos explica en su Informe que, la descalificación relativa del notario por razón de parentesco con alguno de los otorgantes del documento autorizado, según lo dispone la Ley Notarial, *supra*, aplica a la legitimación de firmas como a todo testimonio contemplado en el Reglamento Notarial, 4 L.P.R.A. Ap. XXIV. Por consiguiente, el Informe de la Oficina de Inspección de Notarías concluye que el licenciado Figueroa Álvarez violó la Ley Notarial al autorizar tres (3) declaraciones de autenticidad en las que comparecían su hija e hijastra. No obstante, la Directora de la Oficina de Inspección de Notarías nos informa que el licenciado Figueroa Álvarez no ha tenido en el pasado señalamiento alguno en su desempeño como notario y que su proceder en este caso no es indicativo de un patrón de conducta, sino más bien de una actuación aislada.

Visto lo anterior, procedemos a resolver la presente acción disciplinaria a la luz de las violaciones a la Ley Notarial, *supra*. La controversia se circunscribe a dilucidar si un notario puede autorizar testimonios de legitimación de firmas cuando el firmante, o uno de los firmantes, es su pariente dentro del cuarto grado de consanguinidad o segundo de afinidad.

III.

Un testimonio o declaración de autenticidad es un documento notarial que no forma parte del protocolo, en el cual el notario da fe de la veracidad de un hecho que le consta de personal conocimiento. El testimonio puede referirse a la legitimación de firmas, autenticación de una copia o traducción fiel y exacta de un documento no matriz y a la identidad de cualquier objeto o cosa. Regla 65 y 66 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV. En particular, el testimonio de legitimación de firmas se refiere al documento en que el notario da fe de la identidad del compareciente, de su firma y de la fecha en que firmó, aunque no del contenido del documento.  Regla 67 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV; In re Caratini Alvarado, *supra*.

El notario podrá dar fe de las firmas que aparezcan en un documento no matriz siempre que no se trate de actos comprendidos en los incisos (1) al (6) del Art. 1232 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3453.[3]  Regla 68 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV. De igual forma, el Art. 56 de la Ley Notarial dispone que el notario no podrá autorizar testimonios en los casos comprendidos en el Art. 5 de la referida ley.  4 L.P.R.A. sec. 2091. En particular, el Art. 5 de la Ley Notarial dispone que:

---

[3] El citado artículo se refiere a los actos y contratos que tengan por objeto la creación, modificación o transmisión de derechos reales sobre bienes inmuebles; los arrendamientos de bienes inmuebles por seis años o más; las capitulaciones matrimoniales; la cesión, repudiación y renuncia de derechos hereditarios, entre otros.

"(a) Ningún notario podrá autorizar instrumentos en el que él intervenga como parte o que contenga disposiciones a su favor. Tampoco podrá autorizarlos si alguno de los otorgantes es pariente suyo dentro del cuarto grado de consanguinidad o segundo de afinidad, excepto cuando aquél comparezca en el instrumento en calidad representativa.

(b) No producirán efecto las disposiciones a favor de parientes, dentro del cuarto grado de consanguinidad o segundo de afinidad del notario que autorizó el instrumento público en que se hicieron."

En conjunto, el Art. 56 y el Art. 5 de la Ley Notarial, *supra*, establecen una prohibición expresa al notario. Éste no deberá autorizar testimonios o declaraciones de autenticidad cuando el compareciente sea su pariente dentro del cuarto grado de consanguinidad o segundo de afinidad, en cuyo caso, el documento adolecerá de nulidad parcial cuando el instrumento contenga disposiciones a favor del pariente.

No es la primera vez que tenemos ante nuestra consideración un asunto como el presente. En In re Filardi Guzmán, res. el 23 de enero de 1998, 98 T.S.P.R. 4, señalamos que según el Art. 5 de la Ley Notarial, *supra*, si las disposiciones son a favor del notario son nulos los documentos notariales que contienen esas disposiciones, pero si las disposiciones son a favor de los parientes del notario en los grados prohibidos por consanguinidad o afinidad, lo que son nulas son estas disposiciones y no el documento. Véase además, In re Frontera Enseñat, res. el 24 de enero de 2000, 2000 T.S.P.R. 24.

La función del notario debe siempre reflejar total imparcialidad por lo que autorizar documentos a parientes dentro

de los grados prohibidos por el Art. 5 antes citado resulta contrario a su función notarial. El notario tiene que evitar toda apariencia de conducta profesional impropia debido a que éste representa la fe pública notarial. In re Colón Ramery, 138 D.P.R. 793 (1995); In re Cardona Álvarez, 133 D.P.R. 588 (1993); In re Feliciano Ruiz, 117 DPR 269 (1986).

A tenor con esta normativa, pasemos a dilucidar la controversia que nos ocupa.

IV.

En el caso de autos, el Lcdo. Figueroa Álvarez acepta su relación de parentesco en el primer grado de consanguinidad y segundo de afinidad con las comparecientes en las declaraciones de legitimación de firmas en controversia. Sin embargo, argumenta que no ha violado la Ley Notarial porque, según estima, la prohibición del Art. 56 sólo alcanza a los testimonios más no a las declaraciones de autenticidad (o affidávits), por no tratarse de iguales conceptos.[4] No tiene razón.

El testimonio está contenido en el concepto de affidávit. Anteriormente hemos indicado que el affidávit es el *género*, dentro del cual se incluyen las *especies* o modalidades de autenticidad que pueden referirse a (1) autenticidad de firma; (2) autenticidad de un juramento; y (3) autenticidad de otro hecho, acto o contrato. Rodríguez Vivaldi v Benvenutti & Rivera, 115 D.P.R. 583, 587 (1984). Siguiendo ese razonamiento, cabe concluir que la especie

_____

[4] El referido artículo lee en parte pertinente: "[n]o podrán los notarios autorizar testimonios en los casos comprendidos en la sec. 2005 de este título." 4 L.P.R.A. sec. 2091.

siempre está incluida en el género, por lo que todos los testimonios clasificados como tales en el Art. 56 de la Ley Notarial, *supra*, y la Regla 66 del Reglamento Notarial, *supra*, pueden indistintamente autorizarse lo mismo por la figura genérica del affidávit o por la figura particular del testimonio. Sarah Torres Peralta, El Derecho Notarial Puertorriqueño, ed. especial 1995 San Juan, Publicaciones STP, 1995, Capitulo XV, pág. 24.

Por otro lado, la Ley del 12 de marzo de 1908, 4 L.P.R.A. sec. 887, disponía en su sección primera "[l]lámase affidavit o declaración de autenticidad el acto o el documento...". La actual Ley Notarial de 1987 dispone en su Art. 56 lo siguiente: "[l]lámase testimonio o declaración de autenticidad al documento mediante el cual...". Como vemos, lo que ocurrió fue un cambio en los términos. La ley no establece definiciones distintas para testimonios y declaraciones de autenticidad, ambas se utilizan indistintamente y significan lo mismo. Como señalan los Profesores C. Urrutia y L. Negrón, los affidávits todavía existen con ese nombre. Cuando se redactó la Ley Notarial del 1987 el legislador le cambió el nombre a ese concepto y expresó que el notario, además de redactar instrumentos públicos, hace también testimonios. Este concepto de testimonio o declaración de autenticidad bajo la fe pública está reglamentado por los artículos 56 al 60 de la Ley Notarial. C. Urrutia y L. Negrón, Curso de Derecho Notarial Puertorriqueño, 2da ed. San Juan, Ed. Los Autores, 1999, Pág. 536.

Cabe señalar, que la referida ley sobre affidávits de 1908 no descalificaba al notario para autenticar la firma de una persona

por razón de parentesco. Esta innovación se hace expresa con la Ley Notarial de 1987. Ahora bien, como mencionamos, los documentos en el caso de autos no son nulos, pues la comparecencia como otorgante, de un pariente del notario dentro del cuarto grado de consanguinidad o segundo de afinidad  no tiene efecto de nulidad. La sanción se limita a negarle efecto a las disposiciones a favor de los parientes, dentro de los grados prohibidos, del que autorizó el instrumento en que se hicieron. En el caso de autos, los documentos no contienen disposición que favorezca al pariente del notario por lo que son válidos en su totalidad. In re Hernández González, 106 D.P.R. 456, 457 (1977); In re Filardi Guzmán, *supra*; In re Fronteras Enseñat, *supra*.

En el presente caso, el licenciado Figueroa Álvarez ciertamente violó la Ley Notarial, *supra*. Sin embargo, como es sabido, al determinar la sanción disciplinaria aplicable al abogado, podemos tomar en cuenta factores como la reputación del abogado en su comunidad, el previo historial de éste, si es su primera falta, la aceptación de la falta y su sincero arrepentimiento, si se trata de una conducta aislada, el ánimo de lucro que medió en su actuación, resarcimiento al cliente y cualesquiera otras consideraciones ya bien atenuantes o agravantes que medien de acuerdo a los hechos.  Véase In re Libertad Díaz Ortiz, res. el 29 de febrero de 2000, 2000 T.S.P.R. 53; In re Padilla Rodríguez, res. el 18 de mayo de 1998, 98 T.S.P.R 56; In re Ortiz Velázquez, res. el 15 de abril de 1998, 98 T.S.P.R 42; In re Fernández Paoli, 141 D.P.R. 10(1996).

En el caso particular del Lcdo. Figueroa Álvarez, tomamos conocimiento de su buen historial profesional, incluyendo su desempeño en el servicio público de nuestro país. Además, del Informe de la Directora de la Oficina de Inspección de Notarías se desprende, que él aceptó los hechos imputados y que su actuación no causó daño a persona alguna ni hubo intención de lucro o beneficio personal. De hecho, los documentos autorizados mantienen su validez y no causaron perjuicio a los que actuaron confiando en sus constancias. Procede que limitemos nuestra sanción a una amonestación. Se le apercibe, además, que en el futuro deberá conocer y cumplir estrictamente con nuestro ordenamiento notarial.

Se dictará la Sentencia correspondiente.


FEDERICO HERNÁNDEZ DENTON
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Charles E. Figueroa
Alvarez

AB-98-208      Certiorari

SENTENCIA

San Juan, Puerto Rico, a 13 de diciembre de 2001.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia imponiéndole una sanción disciplinaria al licenciado Charles E. Figueroa Álvarez consistente en una amonestación.  Se apercibe de que en el futuro deberá cumplir a cabalidad con el ordenamiento notarial puertorriqueño.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre sin opinión escrita. El Juez Asociado señor Rivera Pérez no intervino.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo