*In re* EDUARDO MORALES SOTO, querellado.

*Números:* CP-91-699      *Resueltos:* 21 de enero de 1994
AB-90-74

*Jorge E. Pérez Díaz, Procurador General, Anabelle Rodríguez, Procuradora General, Iván F. Fuster Lebrón y Reina Colón de Rodríguez, Procuradores Generales Auxiliares*, abogados de El Pueblo; *Eduardo Soto Morales, pro se*; *David Urbina Urbina*, abogado del querellado; *José F. Rodríguez Rivera, Comisionado Especial*.

PER CURIAM:

## I

Según surge de los autos de este caso, particularmente de las determinaciones de hecho formuladas por el Comisionado Especial, a principios de 1990 Juan E. Díaz Vázquez contrató al querellado, Lcdo. Eduardo Morales Soto, para que éste procurara el cobro de $4,500 que Jesús Cruz Estrada le adeudaba, pactando verbalmente, además, el pago de $1,200 en honorarios de abogado. Luego de varias gestiones realizadas por el querellado, Cruz Estrada se comprometió con un plan de pago para finiquitar la obligación, y el 2 de mayo de 1990 le entregó al querellado un primer cheque (Núm. 755) por la cantidad de $1,500. El

mismo era pagadero conjuntamente a Díaz Vázquez y al querellado.

Luego de recibir el cheque aludido, y sin notificárselo a su cliente, el querellado procedió a endosarlo, firmándolo con su nombre y con el nombre de su cliente, sin estar autorizado para ello. El querellado cobró el cheque y retuvo el dinero recibido.

Posteriormente, Díaz Vázquez fue a la oficina del querellado y la secretaria de éste le dijo que tenía un cheque para él. Se trataba de un segundo cheque por $1,500 (Núm. 773) que el deudor Cruz Estrada había emitido, pagadero igual que el primero a nombre de Díaz Vázquez y del querellado. Como la secretaria no sabía sobre el resto del dinero adeudado, Díaz Vázquez llamó por teléfono allí mismo al querellado, quien le informó entonces a su cliente que le debía $300. Dicha cantidad era el remanente del primer cheque, ya que los otros $1,200 el querellado los había cobrado por su cuenta en concepto de honorarios de abogado. El querellado ordenó, entonces, a su secretaria que endosara por él este segundo cheque y se lo entregara a Díaz Vázquez. El querellado no le pagó los $300 que había admitido le debía a su cliente.

Así las cosas, el 28 de noviembre de 1990 Díaz Vázquez juró una queja ante nos declarando, *inter alia*, que el querellado no le había pagado los $300 aludidos; que nunca había autorizado el plan de pagos a su deudor; que el querellado no le informó de los dos (2) cheques en cuestión al recibirlos; que nunca autorizó al deudor a emitir los cheques conjuntamente a nombre suyo y del querellado; que no autorizó al querellado a endosar el primer cheque por él, y que el querellado no le mantenía informado de sus gestiones y trámites en este caso.

El 1 de febrero de 1991 referimos la queja aludida para investigación al Procurador General, resaltando la alegación de Díaz Vázquez de que su firma había sido falsificada en el endoso de un cheque expedido por Cruz Estrada. El

30 de agosto de ese año el Procurador General finalmente rindió el informe que le había sido requerido, a base del cual el 30 de septiembre de 1991 le ordenamos que procediera a formular la querella correspondiente contra el licenciado Morales Soto.

El 29 de octubre de 1991 el Procurador General formuló cargos contra Morales Soto, imputándole la violación de los Cánones 19 y 23 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Luego de examinar la contestación a la querella presentada por este letrado, el 6 de diciembre de 1991 nombramos al ex Juez Superior José Rodríguez Rivera como Comisionado Especial para entender en esta querella. Dicho comisionado rindió su informe el 30 de abril de 1992, determinando en esencia: (1) que el querellado endosó y cobró el Cheque Núm. 755 sin autorización o consentimiento de su cliente; (2) que a lo largo de las relaciones entre el querellado y su cliente "prevaleció una ausencia consistente de información ... respecto a las gestiones profesionales encomendadas al querellado y llevadas a cabo por éste". Expresó, además, el Comisionado Especial que no le mereció crédito la teoría y versión de los hechos del querellado.

El 27 de mayo de 1992 el querellado compareció ante nos objetando las principales determinaciones de hecho del Comisionado Especial y solicitando la inclusión de otras determinaciones de hecho.

## II

Un examen cuidadoso de todo el expediente de este caso, incluyendo la transcripción de la evidencia, las declaraciones juradas y otros documentos, revela que las determinaciones de hecho del Comisionado Especial están ampliamente sostenidas por la prueba que tuvo ante sí. Encaramos aquí una situación de evidencia conflictiva, ya que entre el querellado y el querellante y sus respectivos

testigos existen versiones dispares sobre algunos de los hechos principales. Pero el Comisionado Especial adjudicó expresamente la cuestión de credibilidad, descartando la versión del querellado, y éste no ha presentado nada ante nos que demuestre que hubo prejuicio, parcialidad o error manifiesto en las determinaciones del Comisionado Especial, que es en este caso el juzgador de instancia. Reiteradamente hemos resuelto que el juzgador de instancia es el que está en mejor posición para aquilatar la prueba testifical y que sus determinaciones merecen la mayor deferencia por parte del foro apelativo. Por ende, no debemos intervenir con las determinaciones del juzgador de instancia, salvo que medie prejuicio o error manifiesto. *Pueblo v. Acabá Raíces*, 118 D.P.R. 369 (1987); *Pueblo v. Cabán Torres*, 117 D.P.R. 645 (1986); *Pueblo v. De Jesús Rivera*, 113 D.P.R. 817 (1983); *Pueblo v. Borrero Robles*, 113 D.P.R. 387 (1982); *Pueblo v. Millán Meléndez*, 110 D.P.R. 171 (1980); *Pueblo v. López Pérez*, 106 D.P.R. 584 (1977); *Ortiz v. Cruz Pabón*, 103 D.P.R. 939 (1975); *C. Brewer P.R., Inc. v. Rodríguez*, 100 D.P.R. 826 (1972).

En su testimonio ante el Comisionado Especial, el querellado declaró bajo juramento que antes de cobrar el primer cheque él habló por teléfono con su cliente Díaz Vázquez y que éste lo autorizó a endosar dicho cheque por él y a cambiarlo para cobrar sus honorarios. Sin embargo, antes, en la respuesta a la querella formulada por el Procurador General, suscrita por el propio querellado, éste había admitido que al recibir el cheque en cuestión había tratado de llamar al cliente *pero al no tener éxito en ello* se personó al banco, endosó el cheque por el cliente y logró cambiarlo sin haber recibido autorización previa del cliente para esta transacción. Esta admisión del querellado es enteramente consistente con el testimonio del cliente, quien reiteradamente declaró que nunca autorizó que el querellado firmara el cheque por él o que lo cambiara y retuviese $1,200. Visto que el Comisionado Especial le creyó al cliente y no al

querellado, y considerando además la previa admisión del querellado y otros elementos evidenciarios que constan en autos, es evidente que la determinación del Comisionado Especial sobre el asunto en cuestión está sostenida por la prueba.

Lo mismo puede decirse de la otra determinación esencial del Comisionado Especial sobre la falta de debida comunicación entre abogado y cliente. En el mejor de los casos, lo único que surge del expediente es que las *secretarias* del querellado tuvieron una que otra conversación con Díaz Vázquez durante los varios meses que duró la relación profesional. No hubo entre el querellado y su cliente el contacto personal y adecuado que la relación presupone.

## III

Las violaciones del querellado de los cánones de ética profesional fueron serias. Por un lado, incumplió con su claro deber bajo el citado Canon 19 de mantener a su cliente siempre informado de todo asunto importante que surja en el desarrollo del caso, como lo demuestra el no haberle dado aviso a tiempo de los pagos que había efectuado el deudor del cliente. Reiteradamente hemos insistido en la importancia de que el abogado mantenga a su cliente debidamente enterado (*In re Acosta Grubb*, 119 D.P.R. 595 (1987); *Colón Prieto v. Géigel*, 115 D.P.R. 232 (1984); *In re Pagán Ayala*, 109 D.P.R. 712 (1980); *In re Cardona Vázquez*, 108 D.P.R. 6 (1978), cosa que el licenciado Morales Soto no hizo con Díaz Vázquez).

Por otro lado, mucho más grave, el querellado violó crasamente las disposiciones del Canon 23 del Código de Ética Profesional, *supra*, que le requieren darle pronta cuenta al cliente de su dinero y mantener una relación fundada en la absoluta honradez. Aquí el querellado endosó un cheque que le pertenecía a su cliente, sin su conocimiento o consentimiento, falsificando la firma de éste, y

cobrando sus honorarios por su cuenta. Aun cuando fuera cierto, como parece, que el cliente había acordado pagarle al querellado $1,200 de honorarios *tan pronto el deudor del cliente hubiese hecho algún desembolso sustancial*, ello no justificaba cobrar los honorarios por su cuenta, sobre todo en la forma impropia e ilegal en que lo hizo. En casos análogos ya antes habíamos resuelto que tal actuación constituye conducta gravemente impermisible de un abogado. *In re Maldonado Soto*, 83 D.P.R. 444 (1961). Véanse, también: *In re Cardona Vázquez*, supra; *In re Félix*, 111 D.P.R. 671 (1981); *In re Vázquez O'Neill*, 121 D.P.R. 623 (1988).

Por los fundamentos expuestos, *procede que se suspenda al querellado del ejercicio de la abogacía por el término de un año*.

*Se dictará sentencia de conformidad.*