*In re* JOSÉ A. FERNÁNDEZ PAOLI, querellado.

*Número:* CP-95-5 *Resuelto:* 6 de junio de 1996

*Carlos Lugo Fiol, Procurador General*, e *Yvonne Casanova Pelosi, Procuradora General Auxiliar*, abogados de El Pueblo; *M. Martínez Umpierre*, abogado del querellado.

PER CURIAM: El 21 de junio de 1995, luego de investigar una queja presentada por el matrimonio compuesto por Luis Landa y Carmela Velasco, el Procurador General presentó una querella contra el abogado-notario José A. Fernández Paoli, en cumplimiento de una resolución nuestra a esos efectos. Le imputó los cargos siguientes:

### PRIMER CARGO

El abogado José A. Fernández Paoli violó el Canon 23 de Etica Profesional, según interpretado por este Ilustre Foro en los casos *In Re: Arana Arana*, 112 D.P.R. 838 (1982) e *In Re: Cardona Vázquez*, 108 D.P.R. 6 (1978), en los cuales se sanciona la retención indebida por parte del abogado de sumas de dinero pertenecientes a su cliente utilizándolas para su propio beneficio.

### SEGUNDO CARGO

El abogado José A. Fernández Paoli violó las disposiciones del Canon 35 de Etica Profesional, el cual señala entre otras cosas la obligación de todo abogado de ser sincero y honrado en los procedimientos utilizando medios consistentes con la verdad evitando inducir a error al juzgador con una falsa alusión de hechos.

En dicha querella el Procurador General hizo la relación de los hechos que a continuación resumimos. El licenciado Fernández Paoli fue contratado por el matrimonio Landa-Velasco para que los representara en una acción por daños. La acción fue transigida por la cantidad de treinta mil dólares ($30,000), mediante un cheque expedido el 11 de septiembre de 1992 por la Corporación Insular de Seguros a nombre de los esposos Landa-Velasco y el querellado de epígrafe. El querellado no informó a los querellantes Landa-Velasco que había recibido el pago de la compensación. No fue sino hasta aproximadamente año y medio más tarde, en abril de 1994, cuando éstos fueron a la Corporación Insular de Seguros para reclamar su compensación que se enteraron de este hecho. La aseguradora les entregó el cheque de treinta mil dólares ($30,000) debidamente

cancelado y endosado con sus firmas. El matrimonio Landa-Velasco negó tanto haber recibido el cheque en cuestión como el producto de éste.

El Procurador General expresó, además, que de la evidencia recopilada por su oficina se desprende que el querellado endosó el cheque y lo cambió en la sucursal del Banco Popular en Miramar el 21 de diciembre de 1992, luego de lo cual el licenciado Fernández Paoli hizo uso personal del dinero.

Después de una serie de prórrogas, el 22 de noviembre de 1995 el licenciado Fernández Paoli presentó una contestación a la querella, acompañada de varios documentos: un sobre cerrado que contenía un expediente siquiátrico del querellado preparado por el ya fallecido doctor en siquiatría Ángel Gregorio Gómez;(¹) una copia del cheque del Banco Popular, y unas declaraciones juradas de los esposos Landa-Velasco. Con respecto a los cargos presentados, expresó que "no contro[vertía] los hechos alegados en la querella". Aceptó que esto conllevaba "una admisión tácita de los cargos imputados en la querella" y procedió a dar la explicación que a continuación resumimos.

Indicó que desde que fue admitido a la práctica de la profesión de abogado, el 29 de octubre de 1964, hasta el momento cuando se presentó esta querella, había practicado su profesión sin que se hubiese presentado una querella en su contra. Alegó que "para todas las fechas materiales que se especifican en la querella, o que pueden relacionarse con los hechos allí alegados, ... estuvo padeciendo de una condición siquiátrica conocida como 'Post-traumatic War Syndrome' ". De acuerdo con el licenciado Fernández Paoli, "[e]sta condición, conjuntamente con una serie de problemas personales y emocionales sufridos por [él] para las fechas en cuestión, generaron en él una condición traumática y depresiva de tal magnitud que le impidieron la claridad de mente necesaria para poder anali-

---

(¹) El Dr. Ángel Gregorio Gómez falleció en mayo de 1995.

zar y recordar en la forma en que ocurrieron los eventos alegados en la querella, sufriendo además episodios de pérdida de memoria". Continuó alegando que fue por estas razones que cuando "fue inicialmente confrontado [por la Oficina del Procurador General] con los hechos que se relacionan en la querella, él no los pudo identificar como reales o como realizados por él".

Expresó, además, que como consecuencia de lo anterior se sometió a un tratamiento siquiátrico con el Dr. Ángel Gregorio Gómez y superó su condición. Entiende que la conducta que se relaciona con la querella es aislada, producto de lo anterior, y que tan pronto se recuperó cobró conciencia de lo ocurrido y procedió a compensar a los esposos querellantes Landa-Velasco "por la suma de [treinta mil dólares] ($30,000) obtenida en la transacción del caso de daños y perjuicios sin cobrar honorarios de clase alguna ... además, satisfizo la suma de [cinco mil dólares] ($5,000.00) para cubrir [los] intereses que pudieron haberse devengado" y les dio una suma adicional de veinticinco mil dólares ($25,000) para compensar cualquier daño que les pudiera haber ocasionado.

Acompañó con una fotocopia del cheque, mediante el cual realizó el pago al matrimonio Landa-Velasco, y las declaraciones juradas de los querellantes Carmela Velasco Pujols y su esposo Luis Landa Menéndez, en la que éstos expresaron haber recibido las sumas de dinero antes mencionadas y no tener interés en que se continuara el procedimiento disciplinario.

Así las cosas, el 29 de noviembre de 1995 el Procurador General compareció y solicitó que, para poder hacer una evaluación adecuada de la contestación del licenciado Fernández Paoli, se le permitiera examinar el informe siquiátrico sometido al Tribunal en un sobre cerrado. El 1ro de diciembre el licenciado Fernández Paoli compareció e informó que había remitido una copia del informe siquiátrico al Procurador General. El 4 de diciembre, el Procurador

General presentó una moción en la cual indicó que, a pesar de sus esfuerzos, el informe siquiátrico resultaba prácticamente ilegible. Solicitó que se ordenase al licenciado Fernández Paoli someter un informe actualizado, para así poder emitir una determinación final sobre su conducta.

El 29 de diciembre de 1995 emitimos una resolución mediante la cual ordenamos al Procurador General contratar los servicios de un perito médico siquiatra "para que exami[nase] al licenciado Fernández Paoli y rin[diese] un informe actualizado de su estado de salud mental y emocional". Éste debería, además, tomando en consideración dicho examen y evaluación, interpretar y evaluar las anotaciones del doctor Gómez y sus diagnósticos, si algunos. El 23 de febrero de 1996, el Procurador General sometió el informe siquiátrico de la evaluación del licenciado Fernández Paoli realizada por la Dra. Haydée Costas. Conjuntamente, incluyó el impresionante *curriculum vitae* de la doctora Costas.

En su informe, la doctora Costas indicó que se entrevistó con el licenciado Fernández Paoli en tres (3) ocasiones y, luego de hacer un recuento de estas entrevistas, concluyó lo siguiente:

> Es la opinión de esta entrevistadora con un grado de certeza médica razonable, que el *Lcdo. Fernández sufrió entre los años 1991–1994 una crisis de vida, acompañada de un cuadro de depresión y ataques de pánico, que le llevaron a tomar decisiones pobres tanto en su vida personal como profesional.* Al presente nos informó que ha logrado sobreponerse a dicha crisis y ha vuelto a funcionar normalmente. Al momento de las entrevistas no encontramos evidencia de enfermedad mental activa, y entendemos que el Lcdo. Fernández se encuentra en condiciones de trabajar en el desempeño de su profesión de abogado. (Énfasis suplido.)

En cuanto a su evaluación del informe siquiátrico del doctor Gómez, expresó lo siguiente:

> Las notas de progreso de tratamiento del Dr. Gómez reflejan que el Lcdo. Fernández estuvo en tratamiento desde mayo 14

de 1991 hasta octubre 25 de 1994. Durante el tratamiento recibió psicoterapia individual y se le prescribió el antidepresivo Proza[c] 20 mg al día. También se le prescribió el tranquilizante Xanax 0.5 mg en ocasiones para controlar la ansiedad. *El contenido de las entrevistas consistía de su reporte de su insatisfacción con el estilo de vida que llevaba y sus problemas matrimoniales.* El terapista trabajó con una tendencia a usar alcohol en exceso, sentimientos de menosvalía y dificultad para toma de decisiones. En varias entrevistas se le describió como deprimido, lloroso, agitado, con sentimientos de culpa y ansiedad anticipatoria. *No identificamos en el expediente el que el Dr. Gómez anotara su impresión diagnóstica. Solo en un ocasión hace referencia a las experiencias de guerra.* (Énfasis suplido.)

Mediante Resolución de 21 de marzo de 1996, le concedimos un término al licenciado Fernández Paoli para que nos indicara por qué la querella no debería quedar sometida por los documentos que obran en el expediente. Le advertimos que de no contestar en dicho término, el caso quedaría sometido en los méritos. El término concedido venció sin que el licenciado Fernández Paoli compareciera. Procede resolver la querella en los méritos sin ulteriores procedimientos.

 Reiteradamente hemos expresado que "la confianza entre abogado y cliente, en particular, el escrupuloso manejo de fondos, constituye elemento inseparable que se proyecta no sólo dentro del foro togado puertorriqueño, sino en el respeto y la estima ante la imagen pública". *In re Félix*, 111 D.P.R. 671, 674 (1981). Véase *In re Báez Torres*, 108 D.P.R. 358 (1979). Constantemente también hemos resuelto que "[u]n abogado no está exento de la sanción disciplinaria correspondiente por el hecho de haber devuelto los fondos retenidos o por haberlos retenido sin intención de apropiárselos permanentemente. La dilación en la devolución de las fondos de por sí es causa suficiente para tomar medidas disciplinarias contra el abogado". *In re Vázquez O'Neill*, 121 D.P.R. 623, 628 (1988). Véase *In re Arana Arana*, 112 D.P.R. 838 (1982).

██ Además, hemos resuelto que el hecho de que el

cliente hubiese acordado pagarle al abogado una cantidad de dinero como honorarios tan pronto el deudor del cliente hubiese hecho algún desembolso sustancial, no justifica que el abogado, para cobrar ese dinero, hubiese endosado un cheque que le pertenecía al cliente, sin su conocimiento, falsificando su firma y cobrando los honorarios por su cuenta. Esta forma impropia e ilegal de actuar viola, sin lugar a dudas, las disposiciones del Canon 23 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. *In re Morales Soto*, 134 D.P.R. 1012 (1994); *In re Vázquez O'Neill*, supra; *In re Félix, supra; In re Cardona Vázquez*, 108 D.P.R. 6 (1978); *In re Maldonado Soto*; 83 D.P.R. 444 (1961).

Hemos reconocido, sin embargo, que circunstancias como la antes mencionada puede constituir un atenuante y ser considerada al imponer la sanción disciplinaria que corresponda. No obstante, estos atenuantes no son, ni pueden ser, exculpatorios de la conducta impropia realizada por el abogado. Las relaciones entre un abogado y su cliente son de naturaleza fiduciaria y están fundadas en la honradez absoluta. *In re Pereira Esteves*, 131 D.P.R. 515 (1992); *In re Rivera Carmona*, 114 D.P.R. 390 (1983).

Con relación a la conducta de los abogados que, no mediando circunstancias atenuantes, retuvieron y mezclaron con sus propios bienes, sin el consentimiento de su cliente, el dinero perteneciente a éste, hemos expresado que esto constituye una conducta grave y que este abogado "[c]on su proceder manchó la buena imagen que debe promover todo miembro de la profesión legal. Incurrió en uno de los pecados capitales: haber retenido y mezclado con sus bienes propios dinero perteneciente a sus clientes. ... Abusó de la confianza en él depositada ...". *In re Vélez Morales*, 132 D.P.R. 72, 74 (1992). Véanse: *In re Rodríguez Bonhomme*, 119 D.P.R. 500 (1987); *In re Ávila, Jr.*, 109 D.P.R. 440 (1980).

Pasemos ahora a aplicar las normas antes expuestas al caso ante nuestra consideración. En cuanto a los hechos

que constituyen la base de la querella según éstos fueron expuestos por el Procurador General, no hay conflicto. El querellado licenciado Fernández Paoli los aceptó. Éste se apropió del dinero perteneciente a unos clientes suyos e hizo uso personal de éste. Para lograr esto endosó, falsificando la firma de sus clientes, un cheque proveniente de la transacción de un caso de daños y perjuicios de éstos y lo cambió en un banco. Tampoco se cuestionan los atenuantes presentados por el licenciado Fernández Paoli de que devolvió, aunque en exceso de dos (2) años más tarde, el dinero más los intereses a los querellantes Landa-Velasco, además de compensarlos con una cantidad adicional por cualesquiera daños que su conducta les pudo haber ocasionado, y de que los querellantes no tienen interés en continuar con la querella.

Como consideración adicional, el licenciado Fernández Paoli plantea que, para la fecha cuando ocurrieron los hechos y comenzó la investigación de la queja por la Oficina del Procurador General, él estaba padeciendo de una condición siquiátrica conocida como *Post-traumatic War Syndrome* y que ésta, conjuntamente con una serie de problemas personales y emocionales, generaron en él una condición traumática depresiva "que le impidieron la claridad de mente para analizar y recordar en la forma en que ocurrieron los eventos alegados en la querella, sufriendo además, episodios de pérdida de memoria".

Del expediente no surge evidencia alguna que apoye la alegación de que el querellado sufrió en algún momento de la condición siquiátrica conocida como *Post traumatic War Syndrome* o de episodios de pérdida de memoria. La doctora Costas determinó que éste, para 1991-1994, años cuando ocurrieron los hechos y se comenzó la investigación por la Oficina del Procurador General, sufrió "una crisis de vida, acompañada de un cuadro de depresión y ataques de pánico *que le llevaron a tomar decisiones pobres tanto en su*

*vida personal como profesional"*. (Énfasis suplido.) Los hechos aceptados por el licenciado Fernández Paoli claramente reflejan que éste, en efecto, tomó decisiones muy pobres con relación a su vida profesional y que estas decisiones configuraron unas graves violaciones a los Cánones 23 y 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

Por todo lo antes expuesto, tomando en consideración los atenuantes y la totalidad de las circunstancias en este caso, *se dictará sentencia que suspenda indefinidamente de la práctica de la profesión de abogado y de notario, y hasta que otra cosa disponga este Tribunal, al abogado-notario José A. Fernández Paoli. Se ordena, además, a la Oficina del Alguacil General que proceda inmediatamente a incautarse de los Protocolos y del Registro de Afidávit del licenciado Fernández Paoli.*

El Juez Asociado Señor Negrón García se inhibió.