EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>    Ángel M. Rosado Nieves | Querella<br><br>2003 TSPR 125<br><br>159 DPR _____ |

Número del Caso: CP-2000-14


Fecha: 30 de junio de 2003


Oficina del Procurador General:

            Lcda. Minnie H. Rodríguez López
            Procuradora General Auxiliar

            Lcda. Vanessa Lugo Flores
            Subprocuradora General


Abogado de la Parte Querellada:
            Lcdo. Héctor A. Sostre Narváez



Materia: Conducta Profesional
        (La suspensión será efectiva una vez advenga final y
        firme la Sentencia, conforme la Regla 45 del Reglamento
        del Tribunal Supremo sobre reconsideración).

        Este documento constituye un documento oficial del Tribunal
        Supremo que está sujeto a los cambios y correcciones del
        proceso de compilación y publicación oficial de las
        decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

Ángel M. Rosado Nieves

CP-2000-14

PER CURIAM

San Juan, Puerto Rico, a 30 de junio de 2003.

En el presente recurso nos corresponde dilucidar si el Lic. Ángel M. Rosado Nieves incurrió en conducta violatoria de los Cánones 12 y 23 de los de Ética Profesional, en su representación legal de la señora Quiñones en procedimientos relacionados con la ejecución de una sentencia de liquidación de una sociedad ganancial y otros procedimientos posteriores.

I

El 25 de octubre de 1999 el Juez Rafael Vissepó Vázquez, del Tribunal de Primera Instancia de Carolina, mediante resolución, ordenó que se elevara el expediente del caso de <u>Guillermina</u>

Quiñones Rosario v. Cruz Betancourt Ruiz para que este Tribunal examinara el comportamiento del Lic. Ángel M. Rosado Nieves (en adelante licenciado Rosado Nieves) a la luz de los postulados éticos que rigen la profesión legal. A esos efectos, este Tribunal ordenó al Procurador General la investigación correspondiente.

Oportunamente, el Procurador General rindió su Informe. En el mismo, sostuvo que el licenciado Rosado Nieves incurrió en violación al Canon 12 de los de Ética Profesional al desplegar una conducta la cual fue causante de dilaciones innecesarias durante la impugnación de subasta en el caso Guillermina Quiñones Rosario v. Cruz Betancourt Ruiz. En dicho caso, el licenciado Rosado Nieves no cumplió con varios señalamientos del tribunal ni con órdenes emitidas por el mismo. Por otro lado, el Procurador señaló que el licenciado Rosado Nieves incurrió en violación del Canon 23 al haber adquirido un interés y participación personal en el dinero obtenido por su cliente en la venta de una propiedad de ésta.

Examinado el Informe del Procurador General se le instruyó que presentase los cargos correspondientes. Una vez el licenciado Rosado Nieves contestó la querella presentada, nombramos un Comisionado Especial para que recibiera y aquilatara la prueba. Luego del examen de rigor, éste nos ha sometido su Informe del cual se desprende el siguiente trasfondo fáctico y legal.

En 1989 se dictó sentencia en el caso de <u>Guillermina Quiñones Rosario v. Cruz Betancourt Ruiz</u> poniendo fin a un pleito de liquidación de la sociedad de gananciales compuesta por Guillermina Quiñones Rosario y Cruz Betancourt Ruiz (en adelante, la señora Quiñones y el señor Betancourt). En dicha sentencia se dispuso lo referente a la adjudicación y liquidación de los bienes de la referida sociedad ganancial. Luego de darle su respectivo valor a los bienes pertenecientes a la sociedad ganancial y de acreditar los créditos correspondientes a cada uno de los ex cónyuges, el tribunal de instancia determinó que la parte correspondiente al señor Betancourt era la mitad del valor total de los bienes[1], el cual ascendió a setenta y cinco mil setecientos setenta y cinco dólares ($75,775.00), menos un crédito a favor de la señora Quiñones por doce mil ochocientos cuarenta y siete dólares con cincuenta centavos ($12,847.50).[2] En síntesis, el señor Betancourt tendría derecho a obtener la cantidad de veinticinco mil cuarenta dólares ($25,040.00) de la venta de la propiedad, mientras que la señora Quiñones tendría derecho a obtener la

---

[1] Consiste en un solar de mil trescientos metros cuadrados con estructura que consiste en casa principal con cuatro dormitorios, terraza, marquesina y anexo consistente en casa de madera techada en zinc con dos dormitorios y balcón.
[2] La mitad del valor de la propiedad sería $37,887.50. A dicha cantidad se le restaría el crédito por la cantidad de $12,847.50. Por lo que el señor Betancourt tendría derecho a $25,040.00.

cantidad de cincuenta mil setecientos treinta y cinco dólares ($50,735.00).

El licenciado Rosado Nieves fue contratado por la señora Quiñones el 13 de mayo de 1993 para que la representara en los procedimientos de ejecución de la sentencia dictada por el Tribunal de Primera Instancia en la cual se liquidó la sociedad de gananciales Betancourt-Quiñones. Éste se desempeñó como abogado de la señora Quiñones hasta el 23 de septiembre de 1996.[3]

En 1993, la señora Quiñones solicitó la ejecución de la referida sentencia. A esos efectos, el tribunal expidió un mandamiento al Alguacil Ángel L. Hernández Benítez (en adelante el alguacil) para que se efectuara la venta en pública subasta del único inmueble de la extinta sociedad ganancial. Luego de la celebración del correspondiente procedimiento de subasta, la misma fue declarada desierta[4] razón por la cual se le adjudicó el bien a la señora Quiñones por la suma de cincuenta mil setecientos treinta y cinco dólares ($50,735.00).[5] En vista de ello, el 13 de octubre de 1993 se otorgó la correspondiente escritura de

---

[3] El licenciado Rosado Nieves presentó la renuncia a la representación el 4 de septiembre de 1996 la cual fue aceptada por el tribunal el 23 de septiembre de 1996.

[4] No surge del expediente que se haya celebrado una segunda y una tercera subasta que hayan sido declaradas desiertas antes de adjudicarle la propiedad a la señora Quiñones por el valor de su acreencia.

[5] Dicha cantidad es la correspondiente a ésta como resultado de la división de la sociedad ganancial luego de sumado el crédito adjudicado por el tribunal en la sentencia de liquidación de la sociedad ganancial. Nada se dispuso sobre la participación del señor Betancourt.

Adjudicación Judicial la cual fue autorizada por el licenciado Rosado Nieves. En la misma, comparecieron el alguacil y la señora Quiñones traspasándole el primero a esta última el dominio absoluto de la propiedad.

En 1995, dicha propiedad fue objeto de una compraventa en la cual la señora Quiñones traspasó el dominio de la referida finca a un tercero. Dicha escritura fue también autorizada por el licenciado Rosado Nieves.

Esta transacción fue financiada por Doral Mortgage (en adelante Doral). A estos efectos, Doral emitió diversos cheques entre los cuales se encuentra uno por veintiséis mil dólares ($26,000.00) a favor del licenciado Rosado Nieves. Esto ocurrió en presencia de la señora Quiñones y con su aquiescencia.

Así las cosas, en octubre de 1995, el señor Betancourt solicitó del Tribunal de Primera Instancia que se declarara nula la subasta o, en la alternativa, que se le ordenara a su ex esposa consignar en el tribunal la cantidad de doce mil quinientos veinte dólares ($12,520.00) a su favor, cantidad a la que tenía derecho en virtud de su participación en la extinta sociedad de gananciales, propietaria de la referida finca, según dispuesto por la sentencia emitida, en 1989, por el Tribunal de Primera Instancia.[6]

---

[6] En dicha sentencia en donde se valoró la propiedad en $76,775.00, éste tenía derecho a la mitad de esta cantidad menos el crédito de $12,847.50 adjudicado por el Tribunal

A estos efectos el Tribunal de Primera Instancia señaló una vista el 8 de diciembre de 1995. A esta vista el licenciado Rosado Nieves no compareció. Sin embargo, se desprende del expediente que éste no fue citado para la misma. Por esta razón, el tribunal la reseñaló para el 27 de febrero de 1996.

De la minuta de la vista del 8 de diciembre se desprende que el licenciado que fue notificado de la vista señalada para el 27 de febrero del 1996 fue el antecesor del querellado quien había renunciado en 1993 y a quien el licenciado Rosado Nieves sustituyó en mayo de ese mismo año. A esta vista el licenciado Rosado Nieves, como es de esperarse, tampoco compareció. En vista de su incomparecencia, el tribunal expidió una orden de mostrar causa por la cual no debieran ser encontrados incursos en desacato por sus incomparecencias del 27 de febrero de 1996, el licenciado Rosado Nieves, la anterior representación legal de la señora Quiñones y la propia señora Quiñones. El tribunal señaló vista para el 28 de marzo de 1996.

El 28 de marzo de 1996 compareció el licenciado Rosado Nieves y le indicó al tribunal que no había podido localizar a la señora Quiñones. Informó además que la

---

de Primera Instancia a la señora Quiñones. Al adjudicársele a ésta la finca por el valor de $50,735.00, el Tribunal de Primera Instancia sostuvo que el señor Betancourt tiene derecho a la mitad de esa cantidad menos el crédito de $12,847.00 antes descrito para un total $12,520.00.

propiedad cuya subasta es impugnada fue vendida a una tercera persona. Ese día se señaló vista para el 27 de junio de 1996 y se expidió, en contra de la señora Quiñones, una orden de mostrar causa por la cual no debiese ser encontrada incursa en desacato civil. Se le ordenó además el pago de doce mil quinientos veinte dólares ($12,520.00) en o antes de la vista señalada para el 27 de junio. A dicha vista el licenciado Rosado Nieves compareció. En ésta el tribunal ratificó la orden expedida en cuanto a la señora Quiñones para el pago de los $12,520 más intereses.

Luego de varios incidentes procesales ante el Tribunal de Primera Instancia, el 13 de marzo de 1997, se ordenó a la señora Quiñones el pago de la referida suma en un término de cinco días bajo apercibimiento de desacato y la posibilidad de ordenar su arresto por su incumplimiento.[7] No se desprende de la minuta que se haya notificado al licenciado Rosado Nieves. Dicha orden se volvió a notificar el 6 de mayo de 1998 esta vez con acuse de recibo.

El 5 de mayo de 1998 se celebró una vista sobre el estado procesal del caso a la cual ni el licenciado Rosado Nieves ni su clienta comparecieron. Según el Informe del Comisionado Especial, el querellado no fue citado. Debemos

---

[7] Se ordenó la notificación de dicha orden a través de un abogado que residía en la misma jurisdicción que la señora Quiñones debido a que ésta reside fuera de la jurisdicción del Tribunal. El 5 de mayo de 1998 el tribunal ordenó que dicha orden fuese notificada a la última dirección conocida en Worchester, Massachussets.

aclarar que ya para esta fecha el querellado no ostentaba la representación de la señora Quiñones, que como mencionáramos anteriormente, culminó el 23 de septiembre de 1996 cuando el tribunal le aceptó la renuncia a la representación, esto notificado el 30 de septiembre de ese mismo año. No obstante, el tribunal procedió a citar al querellado para el 11 de junio de 1998 bajo apercibimiento de desacato. Dicha orden fue diligenciada el 21 de mayo de 1998.

Aunque el licenciado Rosado Nieves <u>ya no ostentaba la representación de la señora Quiñones</u>, al día siguiente de la notificación de la orden antes mencionada, éste presentó una moción informativa señalando que para la fecha que había sido citado éste se iba a encontrar fuera de Puerto Rico y señaló varias fechas hábiles. Dicha moción fue radicada el 22 de mayo a las 8:53 AM según evidencia el sello del tribunal. Debido a que no recibió comunicación alguna del tribunal, el día de la vista envió a su secretaria para que informara al tribunal que éste se encontraba fuera de Puerto Rico. Recalcamos que para esta fecha hacía año y medio que el licenciado Rosado Nieves no ostentaba la representación legal de la señora Quiñones.

En vista de la incomparecencia del licenciado Rosado Nieves el Tribunal de Primera Instancia ordenó su arresto el 12 de junio de 1998. Dicha orden fue diligenciada, se trajo al querellado ante el tribunal pero éste sufrió una

caída en el propio tribunal y fue excusado para que fuese llevado al hospital. Sin embargo, el licenciado Rosado Nieves en vez de acudir al hospital se fue a su casa. Debido a que el tribunal sólo autorizó la ida al hospital, consideró que el que éste se hubiese ido a su casa constituyó un incumplimiento de las órdenes del tribunal. Por esta razón, el tribunal lo declaró incurso en desacato civil ordenó su encarcelamiento inmediato fijándole una fianza de diez mil dólares y señaló una vista para el 29 de junio "a los fines de considerar la conveniencia de la continuación de su reclusión".

El 22 de junio se llamó el caso fuera de calendario y comparecieron el querellado y el fiscal de distrito. Allí se explicó lo sucedido el 15 de junio, en cuanto a su caída y que la razón para irse a su casa en vez de al hospital fue la tardanza de la ambulancia y la persistencia de su dolor. El tribunal dejó sin efecto la orden de arresto del 15 de junio. Sobre la vista señalada para el 29 de junio de 1998 no tenemos minuta.

En vista de lo anterior, el 24 de junio de 1998, el licenciado Rosado Nieves radicó una querella en contra del Hon. Rafael L. Vissepó Vázquez[8] por actuaciones indebidas. La Oficina de Administración de Tribunales no encontró que el Juez hubiese incurrido en conducta impropia que

---

[8] Juez del Tribunal de Primera Instancia que posteriormente elevó los autos del caso ante el Tribunal Supremo para que se ejerciera nuestra jurisdicción disciplinaria.

justificase la elevación de la investigación para la consideración del Tribunal Supremo.

El licenciado Rosado Nieves fue citado para una vista el 9 de diciembre de 1998 a la que éste, a pesar de que ya no fungía como la representación legal de la señora Quiñones, compareció y entregó unos documentos que le habían sido requeridos. Ese día se le dio un término de treinta días para que presentara un memorando con las defensas que estimase pertinente. En dicha vista, el querellado le recordó al tribunal que no ostentaba la representación de la señora Quiñones desde 1996, que no tenía ningún tipo de comunicación con su ex cliente y no conocía de su paradero.

No obstante, el 28 de enero de 1999 mediante una moción informativa, el licenciado Rosado Nieves le informó al Tribunal que la señora Quiñones estaba de acuerdo en pagar la cantidad adeudada a su ex esposo ($12,520.00).[9] El 25 de octubre de 1999 el Tribunal de Primera Instancia emitió una resolución en la que le ordenó a la señora Quiñones satisfacer la cantidad de doce mil quinientos dólares ($12,520.00) más los intereses devengados desde octubre de 1993 hasta que la totalidad del dinero fuera consignado.[10]

---

[9] Primero envió seis mil dólares ($6,000.00) y luego envió dos mil dólares ($2,000.00). Se solicitó del tribunal autorización para consignar este dinero.

[10] Para esta consignación se concedió un plazo de treinta y cinco días. El tribunal autorizó la consignación de los

II

En síntesis la controversia que nos ocupa se circunscribe a determinar si el querellado, con su conducta, incurrió en violación de los Cánones de Ética Profesional. En primer lugar, se le imputan violaciones al Canon 12 debido a las dilaciones en los procedimientos producidos por sus repetidas incomparecencias a los señalamientos del tribunal. En segundo término, debemos determinar si incurrió en conducta violatoria del Canon 23 al adquirir interés en el dinero obtenido como producto de la venta de una propiedad de su clienta. Por último, debemos determinar si la participación del querellado en el otorgamiento de las escrituras referentes al bien de su clienta atentan contra los postulados éticos que rigen nuestra profesión.

A

Los abogados son una parte esencial del proceso de impartir justicia y como tal tienen la ineludible encomienda de desempeñar su labor con la mayor diligencia, responsabilidad e integridad. In re Ortiz Velásquez, 145 D.P.R. 308 (1998); In re Córdova González, 135 D.P.R. 260

---

ocho mil dólares $8,000.00 enviados anteriormente como pago parcial de lo adeudado. Surge del expediente que el señor Betancourt presentó una moción informativa donde sostiene que recibió un cheque por dos mil dólares adicionales a los ya consignados. No surge del Informe que se haya presentado prueba adicional en cuanto al saldo de la deuda pero tampoco se presentó prueba en contrario. Debemos señalar que no surge que el señor Betancourt haya reclamado nada más ante el Tribunal.

(1994). El Canon 12 de los de Ética Profesional, 4 L.P.R.A. AP. IX, C.12, le impone la obligación a la profesión togada de ser entes diligentes y responsables en la tramitación de los casos evitando así dilaciones innecesarias que entorpezcan la resolución de los mismos. Así pues, se le impone el deber a todo abogado a ser puntual en su asistencia y conciso y diligente en la presentación de sus causas. Ello implica que tienen la responsabilidad de desplegar todas las diligencias necesarias para evitar indebidas dilaciones en su tramitación y solución de los casos. Canon 12 de los de Ética Profesional, *supra*. Por tanto, la incomparecencia <u>injustificada</u> a las vistas señaladas por el tribunal, ocasionando la suspensión de las mismas, dilatando así la tramitación de las causas, es violatorio del Canon 12.

B

Por otro lado, el Canon 23 de los de Ética Profesional, 4 L.P.R.A. Ap. IX C.23, prohíbe, en primer lugar, que el abogado adquiera interés o participación en el litigio que le haya sido encomendado. El mismo también dispone que la relación entre un abogado y su cliente es de naturaleza fiduciaria por lo que ésta tiene que estar fundada en la honradez absoluta. Resalta además que cuando el letrado advenga en posesión de bienes o dinero del cliente debe dar pronta cuenta de este hecho a su cliente y nunca debe mezclar dichos bienes con los suyos propios.

Como mencionáramos, el Canon 23, *supra*, prohíbe que el abogado adquiera interés o participación en el asunto en litigio que le fue encomendado. No obstante, el carácter litigioso del bien tiene que coincidir en tiempo con la intervención del abogado en el litigio en relación con dicho bien. Una vez concluido el litigio, el Canon 23 no es impedimento para que, en pago de los honorarios, se le otorgue una participación en el bien del cliente. In re Castro Mesa, 131 D.P.R. 1037 (1992).

Además, en virtud de lo dispuesto por el Canon 23, *supra*, los abogados deben velar porque la relación entre el abogado y el cliente sea transparente. La naturaleza fiduciaria de la relación entre el abogado y el cliente exige que exista una confianza absoluta entre ambos. Esta transparencia es de vital importancia en los asuntos de carácter económico.

Por último, el Canon 23 claramente prohíbe la retención y disposición inapropiada de cualquier suma de dinero pertenecientes a los clientes. In re Gorbea Martínez, res. el 1ro de diciembre de 1999, 99 T.S.P.R. 190; In re Fernández Paoli, 141 D.P.R. 10 (1996). La retención de fondos pertenecientes a sus clientes por parte de un abogado amerita sanción aunque los hubiere devuelto o no hubiese tenido la intención de apropiárselos. Por esto, reiteradamente hemos expresado que retener, en forma no autorizada, sumas de dinero pertenecientes al cliente o

disponer de ellas impropiamente, constituye conducta gravemente impermisible de un abogado. In re Marrero Figarella, 146 D.P.R. 541 (1998); In re Vázquez O'Neill, 121 D.P.R. 623 (1988).

Hemos expresado que aún en circunstancias en que un cliente acuerde pagar honorarios tan pronto reciba dinero en su caso, no se justifica que el abogado, sin consentimiento del cliente, endose los cheques y se apropie de los mismos. In re Pereira Estévez, 147 D.P.R. 147 (1998); In re Fernández Paoli, supra; In re Báez Torres, 108 D.P.R. 358 (1979). En fin, el letrado no puede, aunque se le adeuden honorarios, cobrar los mismos por su cuenta. In re Morales Soto, 134 D.P.R. 1012 (1994).

En síntesis, la transparencia de las relaciones entre abogado cliente y la naturaleza fiduciaria de dicha relación basada en honestidad absoluta es piedra angular para nuestro sistema jurídico. Por esta razón, reiteradamente hemos establecido que los abogados no deben cobrar indebidamente los honorarios de abogado, retener sin autorización dinero de sus clientes, ni disponer de éstos impropiamente.

C

La Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987, 4 L.P.R.A. sec. 2001 et seq., le impone al notario una función dual. Por un lado, sirve como agente instrumental del documento notarial, por el otro, es un

profesional del Derecho con el deber de asesorar y aconsejar legalmente a los otorgantes. In re Colón Ramery, 133 D.P.R. 555 (1993).

El abogado notario representa la fe pública. Es el testigo por excelencia que da forma al convenio entre las partes. Como parte de su función tiene el deber de asesorar y advertir sobre los aspectos legales del instrumento que ante él se otorgan y que éste autoriza. El abogado notario tiene que ser imparcial incluso cuando éste haya representado a uno de los otorgantes anteriormente. Éste tiene la obligación de asesorar por igual a ambos otorgantes.

El notario no es un simple observador de un negocio que ante él se otorga. Su función no se limita a cerciorarse de la identidad de las partes y de la autenticidad de sus fincas. El notario ostenta una función pública que "trasciende la de un autómata legalizador de firmas y penetra al campo de legalidad de la transacción que ante él se concreta." In re Colón Ramery, *supra*.

La labor notarial debe ser ejercida con sumo esmero, cuidado y celo profesional, cumpliendo estrictamente con la Ley Notarial y los Cánones de Ética Profesional. In re Pizarro Colón, res. el 25 de mayo de 2000, 2000 T.S.P.R. 106; In re Vera Vélez, res. el 5 de abril de 1999, 99 T.S.P.R. 46.

La buena observancia de las responsabilidades de la profesión, tanto de abogado como en su función notarial, imponen al notario el deber de realizar las averiguaciones mínimas pertinentes requeridas por las normas más elementales de la profesión. El notario tiene además el deber de hacer las advertencias, aclaraciones y explicaciones necesarias en el otorgamiento de determinado negocio, asegurándose pues de que las partes presten un consentimiento informado. In re Pizarro Colón, *supra*; In re Jiménez Brackel, res. 11 de mayo de 1999, 99 T.S.P.R. 73.

A la luz de esta normativa, pasemos a discutir la situación que tenemos ante nos.

III

A

El Procurador sostuvo que el licenciado Rosado Nieves violó el Canon 12 de los de Ética Profesional al desplegar una conducta la cual fue causante de dilaciones innecesarias durante la impugnación de subasta en el caso Guillermina Quiñones Rosario v. Cruz Betancourt Ruiz. En dicho caso, sostuvo el Procurador, el licenciado Rosado Nieves no cumplió con varios señalamientos del tribunal ni con órdenes emitidas por el mismo. Sin embargo, del Informe del Comisionado se desprende que a las únicas vistas a las que el querellado no compareció fueron aquéllas de las que no fue notificado. Cabe señalar que mientras fue notificado

acudió a todas, incluso cuando ya no era abogado de la señora Quiñones. Veamos.

La primera vista para el caso de impugnación de subasta fue señalada para el 8 de diciembre de 1995. Aunque a esta vista el licenciado Rosado Nieves no compareció, no se desprende del expediente que el querellado hubiese sido citado para la misma. No podemos, por tanto, responsabilizar al querellado por esta ausencia.

El Tribunal señaló la vista para el 27 de febrero de 1996. Al estudiar la minuta de la vista del 8 de diciembre en la cual se señaló esta segunda vista, concluimos que de la misma no se desprende que el licenciado Rosado Nieves fuese notificado. De hecho, se desprende de dicha minuta que quien fue notificado de la vista fue el abogado que había ostentado la representación de la señora Quiñones antes que el licenciado Rosado Nieves asumiera la misma. Como mencionáramos, el letrado que fue notificado había renunciado en 1993, y ese mismo año fue sustituido por el licenciado Rosado Nieves. A la vista del 27 de febrero el querellado, como era de esperarse, tampoco compareció. El tribunal señaló vista para el 28 de marzo de 1996.[11]

El 23 de septiembre de 1996 la renuncia a la representación legal de la señora Quiñones, presentada por el licenciado Rosado Nieves, fue aceptada por el tribunal.

---

[11] El 28 de marzo de 1996 compareció el querellado pero como no se había localizado a la señora Quiñones se señaló vista para el 27 de junio de 1996. El 27 de junio de 1996 el querellado compareció a la vista señalada.

El 5 de mayo de 1998 se celebró una vista sobre el estado procesal del caso a la cual ni el licenciado Rosado Nieves ni su clienta comparecieron. Según se desprende del Informe del Comisionado Especial, el licenciado Rosado Nieves no fue citado para la misma. Además ya para esa fecha éste no ostentaba la representación legal de la señora Quiñones. No obstante, el tribunal procedió a citarlo para el 11 de junio de 1998 bajo apercibimiento de desacato.

Un día después del diligenciamiento de esta citación, el licenciado Rosado Nieves presentó una moción informando que para esa fecha se encontraría fuera de Puerto Rico y ofreció ocho fechas hábiles para señalamiento las cuales implicaban sólo 4 días de demora. No olvidemos que para esta fecha el licenciado Rosado Nieves no ostentaba la representación legal de la señora Quiñones. Debido a que no recibió comunicación alguna del tribunal, el día de la vista compareció su secretaria para informar al tribunal que éste se encontraba fuera de Puerto Rico. Considerando que éste ya no era abogado de la señora Quiñones, que envió con tiempo una moción en la que propuso ocho fechas hábiles para el traslado, el Comisionado concluyó, conclusión que acogemos, que el licenciado Rosado Nieves fue diligente al enviar a su secretaria a excusarlo el día de la vista.

Por último, el querellado, a pesar de que ya no fungía como la representación legal de la señora Quiñones,

compareció respondiendo a una orden dada por el Tribunal a una vista el 9 de diciembre de 1998. Llevó consigo ciertos documentos que le habían sido requeridos. Ese día se le dio un término para que presentara un memorando con las defensas que estimase pertinente. El licenciado Rosado Nieves le recordó al tribunal que no ostentaba la representación de la señora Quiñones desde 1996, y que no tenía ningún tipo de comunicación con su ex cliente. El licenciado Rosado Nieves no cumplió con someter el memorando de derecho. Siendo esta actuación la única orden emitida por el tribunal con la que no cumplió el querellado a pesar de tener conocimiento de la misma. Sin embargo, al analizar este incumplimiento tomamos en consideración que el licenciado Rosado Nieves había sido relevado de la representación legal de la señora Quiñones por el tribunal de instancia en septiembre de 1996, que así reiteradamente lo informó al tribunal y que no obstante cumplió con señalamientos y entregas de documentos solicitados, que eventualmente consiguió a la señora Quiñones que se había mudado fuera de Puerto Rico y que logró que ésta pagara lo debido al señor Betancourt.

A tenor con lo antes expuesto, entendemos que en cuanto al primer cargo, el licenciado Rosado Nieves no puede ser responsabilizado por su incomparecencia al tribunal a vistas para las cuales no había sido citado. Además, el licenciado Rosado Nieves fue diligente en su

actuación en el tribunal, incluso cuando ya no era abogado de la señora Quiñones. Consiguió a su antigua clienta y logró un acuerdo entre las partes en el cual ésta se comprometió a pagar la deuda reclamada por el señor Betancourt. El letrado sólo dejó de cumplir con la orden de someter el memorando de derecho sin solicitar que se le excusara de dicha diligencia. Por considerar que para ese momento éste ya no era abogado de la señora Quiñones y que así lo hizo constar al tribunal, y que entregó al tribunal todo documento que le fuere solicitado, entendemos que no procede sancionarlo por dicho cargo.

B

Por otro lado, el Procurador General sostuvo que el licenciado Rosado Nieves incurrió en violación del Canon 23 al haber adquirido un interés y participación personal en el dinero obtenido por su cliente en la venta de una propiedad de ésta. Por dicha transacción, en la cual el licenciado Rosado Nieves fungió como notario, éste recibió un cheque por la cantidad de veintiséis mil dólares ($26,000.00) de parte de Doral, entidad que ofreció el financiamiento del negocio. De la cantidad recibida por el licenciado Rosado Nieves, once mil dólares ($11,000.00) correspondían al pago de una deuda personal que tenía la señora Quiñones con éste. El resto del dinero correspondió

al pago de gastos y sus honorarios por distintas gestiones realizadas en beneficio de la señora Quiñones.[12]

De la prueba presentada ante el Comisionado surge que la señora Quiñones nunca se querelló de la conducta relacionada con el trabajo legal del licenciado Rosado Nieves ni con la retención de los $26,000.00, al contrario estuvo conforme. Dicha retención fue hecha en su presencia y con su anuencia.

El Canon 23 prohíbe la adquisición de interés o participación en el asunto en litigio. A estos efectos hemos establecido que el carácter litigioso del bien tiene que coincidir en tiempo con la intervención del abogado en el litigio en relación con dicho bien. Como mencionáramos, nada impide que una vez concluido el litigio, en pago de los honorarios, se le otorgue una participación en el bien del cliente. In re Castro Mesa, *supra*.

En el caso de autos, el licenciado Rosado Nieves fue contratado para ejecutar una sentencia de un pleito de liquidación de una sociedad de gananciales. El bien objeto de liquidación fue vendido en pública subasta donde se le

---

[12] El Procurador General solicitó del querellado un desglose de los honorarios cobrados por éste que ascendieron a veintiséis mil dólares ($26,000.00). En dicho desglose el licenciado Rosado Nieves alegó que de los veintiséis mil dólares ($26,000.00) que éste recibió por conducto de un cheque emitido por Doral, once mil dólares ($11,000.00) eran de una deuda que tenía la señora Quiñones con éste por la venta de un Toyota propiedad del querellado; $1,814.57 corresponden a costos de tres escrituras y; $13,185.43 corresponden a honorarios por servicios legales ofrecidos a la señora Quiñones.

adjudicó a su clienta. Eventualmente, la clienta vendió el inmueble a un tercero y es de esta venta que el querellado recibió $ 26,000.00. Debemos señalar que dicho inmueble ya no era objeto de litigio alguno por lo que es perfectamente válido que con la venta del mismo se paguen los honorarios del abogado o cualquier otra deuda que se tuviere con éste.

El Canon 23 también obliga al letrado a dar pronta cuenta del dinero o bienes del cliente recibidos por el abogado y proscribe que éste mezcle dichos bienes con los suyos propios. A estos efectos, hemos dicho que es conducta contraria a los cánones el que un abogado, aunque se le adeuden honorarios, cobre los mismos por su cuenta. In re Morales Soto, *supra.* Sin embargo, la conducta que se quiere evitar es que el abogado cobre indebidamente los honorarios de abogado que se le adeuden, sin el conocimiento y la autorización de sus clientes, al momento de recibir dinero o bienes pertenecientes a sus clientes.

En el caso de autos, la transacción en la cual se le hizo un cheque por veintiséis mil dólares ($26,000.00) a favor del licenciado Rosado Nieves se hizo con pleno conocimiento y aprobación de la clienta. Nótese que Doral financió la compraventa entregando tres cheques diferentes entre los que se encontraba el hecho a favor del querellado. Dicha entrega se hizo frente a la señora Quiñones en el otorgamiento de la escritura de compraventa de la propiedad con el tercero. Además, la señora Quiñones

reconoció la deuda personal que tenía con el licenciado Rosado Nieves por la venta del auto y por honorarios debidos.

A tenor con lo expuesto anteriormente concluimos que el licenciado Rosado Nieves no incurrió en conducta contraria al Canon 23 de Ética Profesional al recibir un cheque producto de la compraventa de un inmueble perteneciente a la señora Quiñones en concepto de pago por deuda previa y honorarios devengados debido a que dicho pago fue con el consentimiento de la clienta. Además dicho bien no constituía un bien litigioso al momento en que se realizó la venta del inmueble pues el mismo había sido adjudicado por venta judicial a la señora Quiñones.

Por su parte, el negocio del automóvil fue uno aparte del caso de liquidación de la sociedad de gananciales y de las propiedades envueltas en la misma. Ese negocio nada tenía que ver con el inmueble objeto de la venta judicial, que luego fue vendido a un tercero y, por consiguiente, no tenía relación con las escrituras otorgadas por el querellado. En fin, la venta del auto tampoco es una violación del Canon 23 debido a que el mismo nunca fue parte de litigio alguno.[13]

---

[13] Por otro lado, desde In re Toro Cubergé, 140 D.P.R. 523 (1996), advertimos que al amparo del Canon 21, 4 L.P.R.A. Ap. IX C.21, las relaciones comerciales entre los abogados y sus clientes son desfavorecidas. La norma que allí establecimos va dirigida a prohibir, de ordinario, las transacciones comerciales entre un abogado y su cliente cuando las mismas tienen el potencial de afectar el juicio

C

En adición al señalamiento de la posible violación al deber de imparcialidad que debe guardar todo notario al autorizar un negocio jurídico, el Comisionado nos llama la atención en cuanto a una violación incurrida por el licenciado Rosado Nieves tanto al autorizar la escritura de adjudicación judicial como en la autorización de la escritura de compraventa del inmueble con el tercero. Expone que según la sentencia emitida en la liquidación de la sociedad de gananciales surgía que ambos ex cónyuges tenían derechos propietarios sobre el bien. Por consiguiente, señala el Comisionado, si alguno de los propietarios tramitaba la venta en pública subasta tenía que honrarle su participación al otro propietario o hacer

_____

profesional independiente del abogado o cuando éstas puedan afectar el deber de lealtad y fidelidad que se le debe al cliente. Dichas transacciones comerciales son inherentemente sospechosas debido a que no sólo el juicio profesional independiente del abogado puede ser seriamente afectado por sus intereses personales en la transacción, sino que la naturaleza desigual de la relación abogado-cliente la hace susceptible de múltiples abusos. In re Morell, res. el 5 de marzo de 2003, 2003 T.S.P.R. 34.

Aunque las transacciones comerciales entre abogado y cliente son de ordinario desfavorecidas, en el caso de autos la venta del carro no tuvo el efecto de afectar el juicio profesional independiente del abogado ni el deber de lealtad y fidelidad que éste le debía a la señora Quiñones. De hecho la señora Quiñones jamás de quejó del desempeño de su letrado y ratificó en varias ocasiones su conformidad con dicha venta.

constar dicha participación en las escrituras autorizadas.[14]

Por su parte, el licenciado Rosado Nieves alegó que no podía hacer constar la suma reclamada por el señor Betancourt porque la misma no surgía de la sentencia. Esto, debido a que la suma que se desprende de la sentencia está basada en la valoración del bien en setenta y cinco mil setecientos setenta y cinco dólares ($75,775.00) mientras que la suma reclamada está basada en el valor en que se adjudicó finalmente el bien.

Estos señalamientos nos obligan a examinar el desempeño como notario del licenciado Rosado Nieves en los procedimientos relacionados a la autorización de las escrituras relacionadas a la venta judicial del inmueble y su subsiguiente compraventa. En primer lugar, debemos analizar si su interés en el producto de la compraventa que éste autorizó tuvo el efecto de violentar el deber de imparcialidad que debe ejercer todo notario en el ejercicio de su función. Por otro lado, debemos estudiar el cuidado ejercido por el licenciado Rosado Nieves en la autorización de tanto la escritura de venta judicial como en la de compraventa.

Hemos afirmado que el notario se destaca como un "funcionario imparcial, que recibe, expone y legitima la voluntad de los que ante él comparecen sin tomar bando, sin

---

[14] Aunque en la Querella presentada no se le imputa ningún cargo relacionado con éste señalamiento, en el Informe presentado por el Procurador, al cuál el licenciado Rosado Nieves reaccionó, sí se discute.

inclinarse a un lado u otro". In re Cancio Sifre, 106 D.P.R. 386, 396 (1977). Su obligación de orientar y advertir ha de desplegarse para todos por igual, con imparcialidad. Incluso, hemos precisado que no basta ser imparcial, también hay que aparentarlo. Véase, In re Sepúlveda Girón, res. el 24 de octubre de 2001, 2001 T.S.P.R. 153; In re Colón Muñoz, 131 D.P.R. 102 (1992); In re Cancio Sifre, *supra*.

El licenciado Rosado Nieves, al fungir como notario en la escritura de compraventa otorgada por la señora Quiñones y un tercero, debía guardar la imparcialidad requerida en el ejercicio del notariado. En el caso de autos, parte del dinero obtenido en la compraventa beneficiaría al querellado ya que con el producto de la misma se le pagarían tanto los honorarios devengados por éste en sus funciones como abogado de la cliente en el procedimiento de ejecución de la sentencia, como los costos del otorgamiento de ambas escrituras y una deuda anterior que tenía la cliente con éste. En el caso de autos, nos es forzoso concluir que al autorizar la escritura de compraventa el querellado tenía un interés particular sobre el negocio jurídico que autorizaba. Dicho interés particular pudo haber afectado el carácter de imparcialidad que debe observar todo notario y su deber de orientar por igual y con el mismo esmero y rectitud a las partes envueltas en el

negocio ya que ninguna de ellas es su "cliente" para estos fines.

Por lo antes expuesto, concluimos que el licenciado Rosado Nieves actuó en contravención con nuestros pronunciamientos en cuanto a la imparcialidad que debe guardar todo notario.

Por otro lado, debemos analizar el cuidado ejercido por el licenciado Rosado Nieves al autorizar la escritura de venta judicial y posteriormente la de compraventa. Llama la atención que en ninguna de las dos escrituras se señaló que el señor Betancourt tenía una participación en dicha propiedad. El licenciado Rosado Nieves no sólo tuvo ante sí la sentencia de 1989 sino que estuvo encargado de solicitar la ejecución de dicha sentencia por lo que necesariamente debió tener conocimiento de la participación del señor Betancourt en el inmueble. Sin embargo, no se desprende que haya hecho advertencia alguna al alguacil cuando éste último adjudicó el inmueble a la señora Quiñones por el valor de su acreencia sin tan siquiera mencionar la acreencia del señor Betancourt. El licenciado Rosado Nieves debió haber hecho constar lo expresado en la sentencia en cuanto a la participación del señor Betancourt en ambas escrituras. Era su deber también advertir a las partes otorgantes en los distintos negocios acerca de la participación del señor Betancourt en el inmueble.

La falta de cuidado del licenciado Rosado Nieves siendo éste el abogado de la señora Quiñones en la ejecución de la sentencia, teniendo conocimiento de que el bien objeto de venta judicial era un bien ganancial donde tanto su cliente como el ex esposo de ésta tenían participación es inexcusable. La misma va en clara contravención con el deber de cuidado exigido a todo notario.

Por todo lo antes expuesto, concluimos que en cuanto a este último aspecto el licenciado Rosado Nieves no desplegó la diligencia y cuidado exigido por la práctica de la profesión. Él dejó de cumplir con las obligaciones más básicas de diligencia y cuidado que se le exigen a los letrados al no asegurarse que tanto los documentos que dieron lugar a la venta en pública subasta como en los trámites posteriores conducentes a la compraventa del inmueble se salvaguardara el derecho del señor Betancourt a que se reconociera su interés en la propiedad. Además, incurrió en violación al deber de cuidado al dejar de advertir a los otorgantes y no consignar en las escrituras lo relativo al interés del señor Betancourt en la propiedad objeto de compraventa.

Por los fundamentos anteriores se dictará sentencia mediante la cual se suspenderá al Lic. Ángel M. Rosado Nieves del ejercicio de la notaría por el término de nueve (9) meses y hasta que otra cosa disponga este Tribunal. Se

ordena a la Oficina del Alguacil que incaute su obra notarial para el trámite de rigor correspondiente por la Directora de Inspección de Notarías.

Se dictará la Sentencia correspondiente.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

Ángel M. Rosado Nieves                    CP 2000-14


SENTENCIA


San Juan, Puerto Rico, a 30 de junio de 2003.

Por los fundamentos antes expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte integral de la presente, se dicta Sentencia y se suspende al Lic. Ángel M. Rosado Nieves del ejercicio de la notaría por el término de nueve (9) meses, contados desde la notificación de la presente.

Se ordena a la Oficina del Alguacil que incaute la obra notarial del licenciado para que sea remitida y examinada y oportunamente objeto de un Informe por parte de la Oficina de Inspección de Notarías.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Andréu García no intervino.


Patricia Otón Olivieri
Secretaria del Tribunal Supremo