*932 TEXTO COMPLETO DE LA SENTENCIA
Los peticionarios, Sucesión de Serafín Massol Ortiz y su viuda Sonia Esther Román Torres, nos solicitan que revoquemos la resolución [1] emitida el 4 de mayo de 2009 por el Tribunal de Primera Instancia, Sala de Utuado (TPI). [2] Mediante la misma, dicho foro declaró Con Lugar la solicitud de descalificación del abogado de los peticionarios, el Ledo. José Saliceti Maldonado; y, además, ordenó que se marquen los puntos de la finca en controversia.
Por los fundamentos que expondremos, se expide el auto de certiorari, se modifica la resolución recurrida, y así modificada, se confirma.
I
El caso ante nuestra consideración tiene su origen en una reclamación civil sobre accesión presentada por t los integrantes de la Sucesión de Serafín Massol Ortiz y su viuda, señora Sonia Esther Román Torres, contra el señor José Rivera Santiago y los esposos José Alberto Rodríguez Estremera y Lourdes Margarita López Pérez (en adelante, conjuntamente, los recurridos).
El 25 de enero de 1992, el licenciado José A. Saliceti Maldonado (licenciado Saliceti), en calidad de notario, autorizó la escritura pública número 15, sobre Compraventa. Mediante dicha escritura, el señor Baldomero Ortiz Cruz le vendió a los esposos Serafín Antonio Massol Ortiz y Sonia Esther Román Torres la finca de 3.5 cuerdas descrita en la misma, sita en el Barrio Saltillo de Ajuntas. Según consta del referido instrumento público, la finca no estaba inscrita en el Registro de la Propiedad.
El 9 de marzo de 1992, el señor Serafín Massol Ortiz, por conducto del licenciado Saliceti, presentó ante el TPI una petición sobre expediente de dominio en relación a la referida finca. En la petición, se identificó la finca de conformidad con la descripción que fue consignada en la antes relacionada escritura. Además, se indicó que la misma tenía número catastral 34-290-000-001-12-001. Se solicitó al TPI que ordenara al Registrador de la Propiedad la inscripción de dicha propiedad a favor del señor Serafín Massol Ortiz y su esposa, señora Sonia Esther Román Torres. Observados los procedimientos de ley, el 12 de junio de 1992, el TPI emitió resolución en la cual ordenó la inscripción de la finca, según solicitado
Posteriormente, luego del fallecimiento del señor Massol Ortiz, sus herederos contrataron los servicios del licenciado Saliceti para representarlos en el pleito de accesión de epígrafe, en el cual se alega que los recurridos están interfiriendo con el uso y disfrute de la propiedad de los peticionarios. Los recurridos son dueños en común pro-indiviso, conjuntamente con otras personas, entre éstos, los herederos de Baldomero Ortiz, de una finca que colinda con la propiedad de los peticionarios.
Luego de iniciado el pleito, el TPI ordenó a los peticionarios traer como codemandados, por entender que éstos son partes indispensables, a los herederos de Baldomero Ortiz. A raiz de ello, los recurridos presentaron escrito intitulado Moción Solicitando Descalificación del Abogado del Demandante. Alegaron que existe un claro conflicto de interés del licenciado Saliceti por incompatibilidad de funciones, debido a que éste fue el notario que autorizó la escritura en la que Baldomero Ortiz le vendió una de las fincas en controversia a los esposos Serafín Massol Ortiz y Sonia Esther Román Torres; y ahora representa en el pleito de epígrafe a los *933 herederos y viuda de Serafín Massol Ortiz, aún cuando los herederos de Baldomero Ortiz han sido unidos al pleito como codemandados. Además, que como el licenciado Saliceti representó al señor Serafín Massol Ortiz en el expediente de dominio que se cuestiona en el pleito, éste deberá ser llamado como testigo para que clarifique al tribunal las siguientes incongruencias: (1) el lugar en donde radicaba el predio de terreno; y (2) la corrección del número de catastro informado en el expediente de dominio.
Por su parte, el licenciado Saliceti se opuso firmemente a la solicitud de su descalificación. Negó las alegadas incongruencias en el título de los peticionarios, y además, alegó que los herederos de Baldomero Ortiz no están opuestos a las pretensiones de sus representados.
Habiendo examinado las posiciones de ambas partes, el 4 de mayo de 2009, el TPI emitió la resolución recurrida, en la cual declaró con lugar la descalificación del licenciado Saliceti y le concedió 30 días a los peticionarios para anunciar nueva representación. En la misma resolución, sin haber formulado conclusiones de hechos y derecho, ni ofrecer fundamento alguno expresó, además, lo siguiente: “Se le concede el mismo plazo [de 30 días] para marcar los puntos. El pago de dicho proceso será satisfecho por la parte demandante”. Los peticionarios solicitaron reconsideración, la cual fue acogida por el TPI, pero declarada no ha lugar.
Inconformes con la referida determinación, oportunamente los peticionarios acuden ante nos y plantean que:
“Erró el tribunal al establecer que la demandante es la única persona que tendrá que sufragar el costo de replantear los puntos de colindancia de su propiedad dejando sin efecto una directriz en contrario solicitada e indicada expresamente por los codemandados, sin dar oportunidad a los demandantes a expresarse.
Erró el tribunal al establecer, sin haberse contratado ni haberse consultado al agrimensor J. Serbiá para el establecimiento de los puntos o replanteo de los mismos en un término de 30 días, obviando el contenido de la correspondencia que a estos efectos remitió dicho agrimensor.
Erró el tribunal al determinar la descalificación del Ledo. José A. Saliceti Maldonado, como abogado de los demandantes por supuesto conflicto de intereses con los herederos del Sr. Baldomero Ortiz Cruz.”
Los recurridos, los esposos José A. Estremera y Lourdes Margarita López Pérez, presentaron escrito en oposición a la petición de certiorari. Con el beneficio de la posición de ambas partes, procedemos a resolver.
n
El Tribunal de Primera Instancia tiene la facultad de ordenar la descalificación de los abogados que participan en un caso, bien para prevenir violaciones a los Cánones de Ética Profesional o para evitar actos disruptivos de los procedimientos. Meléndez v. Caribbean Int’l. News, 151 D.P.R. 649, 661 (2000); K-Mart Corp. v. Walgreens of P.R., Inc., 121 D.P.R. 633, 637 (1988).
Dicha facultad es inherente al poder del tribunal para gobernar los procedimientos ante sí. El ejercicio de ésta no tiene la naturaleza de una medida disciplinaria, poder que está reservado al Tribunal Supremo de Puerto Rico, sino que constituye una determinación procesal. Meléndez v. Caribbean Int’l. News, supra, a las págs. 660-661; Liquilux Gas Corp. v. Berríos, Zaragoza, 138 D.P.R. 850, 864 (1995); Fed. Pesc. Playa Picúas v. U.S. Inds., Inc., 135 D.P.R. 303, 317, n. 25 (1994); K-Mart Corp. v. Walgreens of P.R., Inc., supra, a la pág. 637.
El tribunal puede ordenar la descalificación a solicitud de parte o actuando mota proprio. Meléndez v. Caribbean Int’l. News, supra, a la pág. 661. Cuando la descalificación se solicita por la parte contraria, debe considerarse si ésta tiene legitimación para hacerlo; la gravedad del conflicto de interés; la complejidad del derecho o los hechos pertinentes a la controversia y el expertise de los abogados; la etapa de los procedimientos *934 en que surja la controversia sobre la descalificación y su posible efecto en cuanto a la resolución justa, rápida y económica del caso; y si la moción de descalificación está siendo utilizada como mecanismo procesal para dilatar los procedimientos. Además, el tribunal deberá sopesar el derecho que le asiste a todo ciudadano de escoger libremente el abogado que lo represente, y velará porque el abogado que sea descalificado tenga al menos la oportunidad de ser oído y de presentar prueba en su defensa. Otaño v. Vélez, 141 D.P.R. 820, 828 (1996).
El Canon 21 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, el cual trata el conflicto de intereses, establece:
“El abogado tiene para con su cliente un deber de lealtad completa. Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación legal cuando su juicio profesional pueda ser afectado por sus intereses personales.
No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.
La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aun cuando ambos clientes así lo aprueban. Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste.”
De otra parte, en el ámbito de la función dual de abogado y notario, la Regla 5 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV, R. 5, establece:
“La práctica de la profesión de abogado puede ser en algunas ocasiones incompatible con la práctica de la notaría.
El notario autorizante de un documento público está impedido de actuar posteriormente como abogado de una de las partes otorgantes para exigir en un litigio contencioso las contraprestaciones a que se haya obligado cualquier otra parte en el documento otorgado ante él.
El notario está impedido de representar como abogado un cliente en la litigación contenciosa y, a la vez, servir de notario en el mismo caso por el posible conflicto de intereses o incompatibilidades que puedan dimanar del mismo.
Las normas recogidas en los dos párrafos presentes aplicarán al notario personalmente y no a aquellos notarios y abogados que sean o hayan sido sus socios o compañeros de oficina ...
No obstante, podrá actuar el abogado como notario en toda acción ex parte, de jurisdicción voluntaria, y en los recursos gubernativos, a menos que su actuación esté expresamente prohibida por ley o doctrina jurisprudencial. También, podrá actuar el notario como abogado en un mismo asunto cuando el notario antes de un litigio sólo haya dado fe de la autenticidad de firmas y en el litigio no estén en controversia las firmas ni el documento donde aparezcan tales firmas sea el objeto principal de la reclamación.
Queda siempre al sano juicio del notario y sus socios o compañeros de oficina, dentro de su responsabilidad *935 profesional, decidir cuándo deben abstenerse de actuar aun en casos en que su actuación estuviere permitida, pero que por sus particulares circunstancias en la dimensión ética podrían generar un potencial de conflicto o la apariencia de conducta impropia.”
Desde su aprobación, la citada Regla 5, supra, ha sido objeto de interpretación por nuestro Tribunal Supremo en varias ocasiones. Se ha señalado que dicha Regla expone la norma general relativa a la incompatibilidad de funciones del abogado y del notario, cuando ambas participaciones versan sobre un mismo asunto u ocurren en un mismo caso. In re: Avilés, Tosado, 157 D.P.R. 867 (2002).
En esas circunstancias, nuestro más Alto Tribunal categóricamente ha distinguido la función de un letrado en el desempeño de la práctica de la abogacía y de la notaría. Id. Así, en In re: Colón Ramery, 133 D.P.R. 555 (1993), (“In re: Colón Ramery F) y, en su reconsideración, In re: Colón Ramery, 138 D.P.R. 793 (1995), (“In re: Colón Ramery II”), dicho foro expresó que el ejercicio de la abogacía y del notariado envuelven quehaceres distintos y que el abogado notario ha de ser escrupuloso en deslindar los referidos campos. Véase también, In re: Avilés, Tosado, supra. El notario, a diferencia del abogado, está llamado a ser imparcial con todos los otorgantes del instrumento que autorice. In re: Colón Ramery I, supra. Debido a ello, “el notario está impedido en el descargo de la fe pública que él representa de tomar partido a favor de uno de los otorgantes.” Id. El elemento de imparcialidad es de gran importancia en el notariado de estirpe latina y que este criterio debe regir todas sus actuaciones. Id.; Véase también, In re: Avilés, Tosado, supra.
En el ejercicio de su ministerio y en el descargo de la fe pública en él depositada, el notario no puede tomar partido o bando, porque representa la ley para todas las partes. In re: Avilés, Tosado, supra. Su obligación de ilustrar, de orientar y de advertir, ha de desplegarla para todos por igual, con imparcialidad. Id. Debido a ello, en In re: Colón Ramery II, supra, nuestro Tribunal Supremo recalcó que la práctica de la profesión de abogado es incompatible con la práctica de la notaría, cuando ambas intervenciones del abogado notario traten sobre el mismo asunto. Véase también, In re: Avilés, Tosado, supra. Asimismo ha reiterado que no basta ser efectivamente imparcial, hay además que aparentarlo. In re: Avilés, Tosado, supra.
Por su parte, el Canon 22 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, C. 22, dispone que:
“Excepto cuando sea esencial para los fines de la justicia, el abogado debe evitar testificar en beneficio o apoyo de su cliente. Cuando un abogado es testigo de su cliente, excepto en materias meramente formales, tales como la comprobación o custodia de un documento y otros extremos semejantes, debe dejar la dirección del caso a otro abogado.”
Igualmente un abogado debe renunciar la representación legal de su cliente, cuando se entera de que el propio abogado, un socio suyo o un abogado de su firma puede ser llamado a declarar en contra de su cliente.
El Tribunal Supremo ha interpretado que, conforme a dicho precepto, un abogado no puede participar en litigios en los que pudiera ser llamado a testificar sobre los hechos. In re: Cardona Álvarez, 133 D.P.R. 588, 593 (1993).
Los abogados de las partes no están inmunes a ser llamados a deponer cuando ello resultare necesario para el esclarecimiento de un caso. Ades v. Zalman, 115 D.P.R. 514, 524 (1984).
Sin embargo, los tribunales de instancia son quienes están en mejor posición para determinar cuál debe ser el manejo del caso ante su consideración. Como corolario de lo anterior, los foros apelativos no deben intervenir con las determinaciones de los tribunales sentenciadores que estén enmarcadas en el ejercicio de la discreción que se les ha concedido para encaminar procesalmente los asuntos que tienen pendientes. En situaciones excepcionales, tales actuaciones serán objeto de revisión si son arbitrarias, constitutivas de un craso abuso de *936 discreción, o basadas en una determinación errónea que a su vez haya causado un grave perjuicio a una de las partes. Rebollo v. Gil, 148 D.P.R. 673 (1999).
A tenor con lo anterior, la determinación de derecho del tribunal de instancia de descalificar a un abogado es una decisión impregnada de un alto grado de discreción que tiene dicho, foro en el manejo procesal de un caso. Los tribunales apelativos no deben, con relación a determinaciones interlocutorias discrecionales procesales, sustituir su criterio por el ejercicio de discreción del tribunal de instancia, salvo cuando dicho foro haya incurrido en arbitrariedad o craso abuso de discreción. Meléndez v. Caribbean Int’l. News, supra, a las págs. 664-665.
ni
Los primeros dos señalamientos de errores están estrechamente relacionados, por lo que los atenderemos en conjunto. Plantean los peticionarios que erró el Tribunal de Primera Instancia al determinar que ellos tenían que sufragar el costo para fijar los puntos de colindancia de su propiedad, y que dicha gestión debía estar terminada en 30 días.
La escueta determinación a esos efectos está contenida en la últimas dos oraciones de la resolución recurrida, como sigue: “Se le concede el mismo plazo para marcar los puntos. El pago de dicho proceso será satisfecho por la parte demandante.”
Dicha determinación no fue fundamentada en la resolución recurrida, ni surge en ésta asunto alguno relacionado a dicha orden. La totalidad del contenido de la resolución está dedicada a atender la solicitud de descalificación del Ledo. Saliceti.
Alegan los peticionarios que en cuanto a la mensura de la finca lo único que tuvo ante su consideración el TPI el día en que se discutió la solicitud de descalificación del Ledo. Saliceti, fue una petición verbal del abogado de los recurridos (Ledo. Román) respecto de una carta suscrita por el Agrimensor J. Serviá, en la cual éste dejaba claramente establecido que se podía determinar el lugar en que enclava la finca de los peticionarios, y con lo cual los recurridos no estaban de acuerdo. Aducen, además, que ya anteriormente el TPI había dispuesto de esta situación indicando que todas las partes aportarían para la mensura porque todos estaban afectados por dicha situación; y que ninguna de las partes había objetado ni recurrido de dicha decisión la cual está contendida en la minuta de la vista celebrada en Cámara el 20 de septiembre de 2006. [3]
Plantean además los peticionarios, que no existe contrato alguno con el agrimensor J. Serviá, ni se conoce si está dispuesto a realizar el trabajo de mensura en 30 días. Además, que el TPI no ha establecido las salvaguardas necesarias para que el agrimensor entre a las propiedades y entreviste testigos que puedan dar información sobre la ubicación de los puntos de la finca. En otras palabras, que la determinación del TPI es contraria a los fundamentos antes esgrimidos por el propio tribunal para determinar que todos aportarían a los gastos.
Por su parte, los recurridos plantean que en varias mociones habían solicitado al TPI el relevo del pago de la mensura de la finca de los peticionarios. Nos remiten a las siguientes mociones: (1) Réplica a Moción a Nombramiento de Perito radicada el 17 de febrero de 2009; y (2) Réplica a Moción Incluyendo Documento radicada el 3 de abril de 2009. [4] En estas mociones, en síntesis, los recurridos le planean al TPI que quien tiene que probar la ubicación de su finca son los peticionarios, por lo que son éstos quienes tienen que pagar por la mensura que deberá realizar su perito. Además, que de ser necesario que se mensure la finca de los recurridos, entonces éstos costearan dicho gasto.
Es evidente que aunque el TPI no discutió en la resolución recurrida lo relativo al pago por la mensura de la finca de los peticionarios, dicho asunto había sido planteado nuevamente por los recurridos y estaba pendiente *937 de ser resuelto por el Tribunal. Además, dicho asunto no requería mayor consideración ni que se emitiera una resolución fundamentada, y estaba dentro de la discreción del TPI reevaluar su determinación a base de los nuevos argumentos de los recurridos. No obstante, en cuanto a la fijación del término, cabe señalar que de las alegaciones y admisiones que hacen ambas partes surge claramente que el término de 30 días que fue concedido por el TPI para mensurar y marcar los puntos de la finca de los peticionarios no puede ser cumplido, por lo que dicha dererminación es arbitraria y debe ser revocada.
A tenor con lo antes señalado, concluimos que de los primeros dos señalamientos de errores, solamente se cometió el segundo.
En el tercer señalamiento se plantea que erró el TPI al descalificar al licenciado Saliceti, de la representación legal de los peticionarios, por alegado conflicto de intereses con los herederos de Baldomero Ortiz Cruz.
En este caso, en lo pertinente al asunto de la descalificación del licenciado Saliceti, lo que está en controversia no es la identidad del objeto de la escritura de compraventa otorgada por éste, sino la razón por la cual en dicha escritura se indica que la finca está ubicada en el Barrio Saltillo de Adjuntas cuando aparentemente lo correcto es que está ubicada en el Barrio Garzas de dicho municipio. Además, no surge de autos que exista controversia alguna entre los herederos del vendedor -Baldomero Ortiz Cruz- y los herederos del comprador - Serafín Massol Ortiz- y la compradora Sonia Esther Román Torres. Por tanto, no podemos hablar de intereses encontrados, según definidos en el Canon 21. Al menos hasta este momento.
No obstante, existe una posibilidad o apariencia de conflicto por las incompatibilidades que puedan surgir más adelante en el pleito entre los peticionarios y los herederos de Baldomero Ortiz Cruz. Ello, porque éstos en unión a los recurridos y a otras personas son dueños en común pro-indiviso de la finca a través de la cual los peticionarios reclaman derecho de paso. La Regla 5 del Reglamento Notarial, supra, establece que el notario debe evitar esa posibilidad de conflicto.
Además, ante la discrepancia sobre el barrio en que ubica la finca, se ha planteado la posibilidad de que el licenciado Saliceti tenga que ser llamado como testigo para que informe de dónde o de quién obtuvo dicha información, lo cual podría requerir la salida del licenciado Saliceti de la representación legal de los peticionarios. Ello, de conformidad con lo resuelto por el Tribunal Supremo en cuanto a que un abogado no puede participar en litigios en los que pudiera ser llamado como testigo de los hechos. Véase, In re: Cardona Álvarez, 133 D.P.R. 588, 593 (1993), y el Canon 22, supra.
Cabe aclarar que aunque la posible citación al licenciado Saliceti no ha sido enfocada a los hechos propiamente, la decisión del TPI de descalificarlo no es arbitraria si sopesamos la totalidad de las circunstancias que rodean el caso, pues la misma evita la apariencia de conducta impropia que pudiera proyectar el potencial conflicto ético que ha sido planteado; y, además, se produce en una etapa relativamente temprana en el trámite del caso, lo cual evita los contratiempos que trae consigo el cambio de representación legal de una parte en la etapa avanzada del caso. En fin, la determinación del TPI está enmarcada dentro de la facultad que se le ha conferido a los foros de instancia para el manejo de los casos. No se cometió el tercer error.
Por último, procede señalar que la descalificación no-es un castigo ni una medida disciplinaria, sino un mecanismo para evitar posibles violaciones ético-profesionales.
rv
Por los fundamentos antes expuestos, se modifica la resolución recurrida a los fines de dejar sin efecto el señalamiento de término de 30 días para mensurar la finca de los peticionarios, y así modificada, se confirma en todo lo demás.
*938 Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2009 DTA 37

. En el escrito presentado, el cual tituló Apelación, la peticionaria se refiere a la resolución recurrida como “sentencia” Siendo dicho dictamen una Resolución, y así designada por el TPI, el recurso fue acogido como una solicitud de certiorari.

. Hon. Víctor D. De Jesús Cubano, Juez.

. Véase, Minuta, a la pág. 55 del apéndice del recurso.

. Véanse, a las págs. 62-66 y 85-86, respectivamente, del apéndice del escrito de oposición al recurso.